S00A1560. WATKINS v. THE STATE.
(540 SE2d 199)

BENHAM, Chief Justice.

Appellant John Alton Watkins was found guilty of malice murder, two counts of felony murder, armed robbery, and possession of a firearm during the commission of a crime on October 21, 1993, after a

---

jury trial.[1] The evidence presented at trial established the following: On January 10, 1993, Juan Pierre Mingo was found dead in his taxi-cab as a result of two gunshot wounds to the head. No money was found in the victim's pockets, though the victim routinely carried $100 in small bills for change and had collected at least $13 in fares that night. At the time appellant was arrested for the crimes, he had $44.27 in his possession, even though he was given only $20 a week for allowance and other money for performing household chores. Police determined that the address and phone number of the last fare the victim picked up was that of appellant. When questioned, appellant denied that he had called a cab that evening and said that he had gone to a movie with his girlfriend, returned home, gone to a grocery store, and spent the rest of the evening at home. Appellant admitted later in that encounter that he had gone to see another girlfriend and had not spent the entire remainder of the evening at home.

Appellant's uncle, with whom appellant and his mother lived, turned over to police a .22 derringer handgun and four live rounds he found among appellant's belongings the day after the shooting. The gun had pearl handles and was identical to a gun that had been stolen from appellant's mother. The bullet fragments recovered from the murder scene were later found to have been fired from the gun.

At trial, appellant testified that on the night of the victim's death, he had gone to a movie with his girlfriend, the two had gone to a grocery store, and then appellant returned home. He then called a cab for himself and a man named "Jay," and took it to an apartment complex where Jay's girlfriend lived. When they got there and were trying to determine how to pay the fare, the victim propositioned them for sex. Rebuffing the victim's advances, Jay shot the victim. Appellant testified that he had found the gun and lent it to Jay at his request prior to the shooting. Appellant also admitted supplying Jay with bullets he had taken from his mother.

After the shooting, the two men decided not to call the police and parted ways. Appellant testified he went straight home, though his testimony conflicted with a statement given to police where he claimed to have gone to the apartment of another female friend and

---

[1] Appellant was indicted on August 13, 1993, for malice murder, two counts of felony murder, armed robbery, and possession of a firearm during the commission of a crime. A jury trial was held on October 19 through October 21, 1993 and appellant was found guilty of all charges. On October 21, 1993, appellant was sentenced to a life sentence for the malice murder conviction, a life sentence, to be served consecutively, for the armed robbery conviction, and a five year sentence, to be served consecutively, for the firearm conviction. Appellant filed a motion for new trial on November 18, 1993, which was denied on April 14, 2000. He filed a notice of appeal on May 12, 2000, and the case was docketed in this court on June 6, 2000. It was submitted for a decision on the briefs.

telephoned Jay. According to appellant's trial testimony, Jay brought the gun to his house the following day and asked him to dispose of it. Appellant did not know Jay's last name, phone number or address. Appellant's uncle testified that he had never heard of someone named Jay.

1. The evidence, though circumstantial, was sufficient to authorize a rational trier of fact to find appellant guilty of all the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Mullins v. State*, 269 Ga. 157 (1) (496 SE2d 252) (1998). "A conviction based on circumstantial evidence is authorized when every reasonable inference and hypothesis except that of guilt is excluded by the evidence." *Mullins*, supra. It is the jury's role to resolve conflicts in the evidence and determine the credibility of witnesses. *Metts v. State*, 270 Ga. 481 (2) (511 SE2d 508) (1999). Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a jury could have reasonably found that every reasonable hypothesis was excluded except for appellant's guilt.

2. Appellant argues the trial court erred when it admitted hearsay testimony for the purpose of explaining a police officer's conduct. At trial, a police officer who investigated the matter testified that he went to the apartment of the woman appellant said Jay was visiting and asked the inhabitants whether they knew a person named Jay or John. Over appellant's hearsay objection, the officer was allowed to testify that all of the inhabitants stated they did not know anyone named Jay or John. The testimony was admitted to explain the officer's course of conduct.

This Court has stated that only on rare occasions will the need to explain the conduct of an investigating officer justify the admission of hearsay evidence. *Weems v. State*, 269 Ga. 577 (2) (501 SE2d 806) (1998); *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982). This case does not present one of the rare instances where an officer's conduct is a relevant issue. Compare *Greene v. State*, 266 Ga. 439 (25) (469 SE2d 129) (1996); *Funderburk v. State*, 221 Ga. App. 438 (471 SE2d 535) (1996). Thus, the trial court erred in admitting the hearsay testimony. However, we conclude that the error was harmless based on appellant's inability to provide Jay's last name, address, telephone number, or any other information verifying the identity of Jay during questioning by police and at trial and based on the testimony of appellant's uncle that he had never heard of anyone named Jay. See *Simmons v. State*, 271 Ga. 563 (4) (c) (522 SE2d 451) (1999).

3. Appellant argues the trial court erred in allowing the jury to read a transcript of his taped statement to police. During jury deliberations, the jury inquired about a specific portion of appellant's statement to police. The trial court asked the jurors if they wanted to

listen to the tape, to which the jurors responded by asking to take a copy of the transcript in the jury room. The trial court denied the jury's request and instead allowed the jurors to read the statement in the jury box. Appellant contends that this action was equivalent to "sending his statement out with the jury and overemphasized that testimony."

We disagree that the trial court erred in allowing the jury to read the transcript. The trial court has discretion to grant the jury's request to rehear portions of the evidence in the courtroom after the jury has retired and begun deliberations and has discretion to allow the jury to rehear other portions of the evidence not specifically requested to avoid placing undue influence on the specific evidence requested. *Byrd v. State*, 237 Ga. 781 (229 SE2d 631) (1976); *Martin v. State*, 240 Ga. App. 901 (525 SE2d 728) (1999). Neither is it error for a trial court to allow a jury to read a transcript of testimony where the jury asks to hear the tape recording of the testimony. *Barnes v. State*, 230 Ga. App. 884 (497 SE2d 594) (1998). In order to demonstrate an abuse of the trial court's discretion, appellant must show that there are "special circumstances" that would make it unjust to allow the jury to revisit the evidence. *Martin,* supra. Appellant has shown no such special circumstances.

4. Appellant argues the trial court erred when it sentenced him to a life sentence on each of two counts of felony murder after appellant had been sentenced to life for malice murder. There is no indication in the record that the trial court vacated the felony murder convictions as required by law.[2] *Malcolm v. State*, 263 Ga. 369, 372 (434 SE2d 479) (1993). Thus, appellant's felony murder convictions are vacated by operation of law. We direct the trial court to amend the record in accordance with our ruling.

*Judgment affirmed in part and remanded. All the Justices concur.*

DECIDED JANUARY 8, 2001.

*William C. Puckett, Jr.,* for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Kristin L. Wood, Assistant District Attorneys, Thurbert E. Baker, Attorney Gen-*

---

[2] The sentencing report states as follows:
Life in prison as to Counts 1, 2, 3 [malice murder, 2 counts felony murder]. All to run concurrent. Life in prison as to Count 4 [armed robbery]. To run consecutive with Counts 1-3. 5 years to serve in prison as to Count 5 [possession of a firearm during the commission of a crime]. To run consecutively with Counts 1-4. Total 2 Life Sentences 5 years to serve.

*eral, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.