## S04A0935. ROBERTS v. THE STATE.
(604 SE2d 500)

HINES, Justice.

Damien Durant Roberts appeals from his convictions in connection with the death of Gustavo Martinez Hernandez ("Martinez").[1]

---

[1] Martinez was killed on January 29, 1999. On January 19, 2000, a Gwinnett County grand jury indicted Roberts for malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of an attempt to commit armed robbery, aggravated assault, attempt to commit armed robbery, possession of a firearm during the commission of the felony of aggravated assault, and possession of marijuana with the intent to distribute. Roberts moved to suppress the videotape of a statement he made to police, and the motion was granted on June 20, 2000; on appeal, the trial court was reversed. See *State v. Roberts*, 273 Ga. 514 (543 SE2d 725) (2002). Roberts was tried before a jury April 15-19, 2002, and was found guilty of malice murder, felony murder while in the commission of aggravated assault, aggravated assault, and possession of a firearm during the commission of aggravated assault; he was found not guilty of felony murder while in the commission of an attempt to commit armed robbery and of attempting to commit armed robbery. On April 19, 2002, an order of nolle prosequi was entered on the charge of possession of marijuana with the intent to distribute. Also on that day, Roberts was sentenced to life in prison for malice murder and a term of five years in prison for possession of a firearm during the commission of aggravated assault; the aggravated assault charge merged with the malice murder charge and the felony murder charge was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). Roberts moved for a new trial on May 3, 2002, and again on November 15, 2002; the motions were denied on November 14, 2003. Roberts filed a notice of appeal on December 8, 2003. His appeal was docketed in this Court on February 11, 2004, and submitted for decision on April 5, 2004.

For the reasons that follow, we affirm.

Construed to support the verdicts, the evidence showed that Martinez, on a bicycle, encountered an automobile in which Roberts was a passenger. Roberts asked Martinez for money; when Martinez said he had none, Roberts shot him once in the chest with a .22 caliber pistol. Martinez rode his bicycle a short distance before falling. Martinez later died.

1. Roberts contends that the evidence presented by the State was not sufficient to enable a rational trier of fact to find him guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). But, there was a considerable body of evidence proving that Roberts committed the crimes. An eyewitness testified that he saw Martinez speaking to an occupant of a car, then heard a shot, saw Martinez try to peddle the bicycle away, and then fall to the ground. One witness testified that the night of the shooting, Roberts told him that: while he was a passenger in a car, he and the driver saw a Hispanic man on a bicycle; they resolved to rob him; Roberts produced a .22 caliber pistol and asked the Hispanic man for money; he responded that he did not have any; Roberts shot the Hispanic man with the pistol; and Roberts told the driver to "drive." This witness also testified that he helped Roberts dispose of a .22 caliber pistol in a lake. Another witness also testified that, shortly after the shooting, Roberts told him that, while in the passenger seat of a car driven by a friend, he used a .22 caliber pistol to shoot and kill a Hispanic on a bicycle. Additionally, the State introduced a videotape of Roberts's statement, during which he admitted to shooting Martinez with a .22 caliber pistol.

Roberts argues that the evidence is insufficient because the eyewitness to the shooting did not identify him as the shooter and stated that he saw only the driver in the car, and that the testimony of the two witnesses whom Roberts told of the killing was unreliable. However, at most he raises issues of conflicting evidence and credibility. " 'It is the jury's role to resolve conflicts in the evidence and determine the credibility of witnesses.' [Cit.]" *Davis v. State*, 275 Ga. 633, 635 (570 SE2d 305) (2002). The evidence was sufficient to allow the jury to find Roberts guilty of the crimes of which he was convicted. *Jackson*, supra.

2. On the authority of the decision in *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), Roberts challenged the State's exercise of its peremptory strikes against two African-American members of the jury venire.

The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must

make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent. [Cit.]

*Thomas v. State*, 274 Ga. 156, 161 (5) (549 SE2d 359) (2001). A trial court's finding as to whether the opponent of a strike has proven discriminatory intent is entitled to great deference and will not be overruled unless clearly erroneous. *Barnes v. State*, 269 Ga. 345, 350 (6) (496 SE2d 674) (1998).

The trial court found that Roberts made a prima facie showing of racial discrimination and proceeded to an evaluation of the State's explanations for its strikes. The State explained it struck the first prospective juror because her answers did not relate to the questions asked of her and were not well articulated, leading the prosecutor to suspect that she possessed limited intelligence. This is a race-neutral explanation. See *Dukes v. State*, 273 Ga. 890, 891 (2) (548 SE2d 328) (2001).

The State struck the second prospective juror because of an incident at a water fountain, which the juror reported to a bailiff. The struck juror stated that he was standing in line at a water fountain, and a Caucasian juror took a drink of water, saw the African-American juror behind him, and turned around and spit the water back into the fountain. The struck juror reported the incident to a bailiff because he believed that it showed that the Caucasian juror might be racially biased. The prosecutor stated that, as no issue of race had been introduced in voir dire, the juror's perceptions of the incident and decision to report it indicated an undue attention to issues of race, and that the prosecutor would have struck any potential juror who reported such an incident, regardless of that juror's race. The State's explanation did not show a stereotypical belief peculiar to any specific race, nor was there any discriminatory intent inherent in the explanation. See *Barnes*, supra at 350 (6). Accordingly, considering the totality of the circumstances, the trial court's ruling that Roberts did not carry his burden of proof to show a discriminatory purpose in the State's exercise of its peremptory strikes was not clearly erroneous. Id.

3. Roberts contends that the videotape of his statement to the police should not have been introduced into evidence as it was not made voluntarily. This issue has already been decided adversely to him in the State's pre-trial appeal. See *State v. Roberts*, 273 Ga. 514 (543 SE2d 725) (2001).

4. Finally, Roberts asserts that the trial court erred in allowing the jury, during deliberations, to view the videotape of his statement

to police, which had been played during the presentation of the State's evidence. But, the trial court has discretion to allow the jury to rehear requested parts of the evidence after it has begun deliberations. *Watkins v. State*, 273 Ga. 307, 310 (3) (540 SE2d 199) (2001). Nor were there any special circumstances surrounding the playing of the tape which would work an injustice. Id. Further, before playing the videotape, the trial court instructed the jury that it was to consider all the evidence in its deliberations; after the tape was played, the court reminded the jury of this instruction. The court did not abuse its discretion in permitting the re-playing of the videotape.

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 25, 2004.

*Ellis R. Garnett*, for appellant.

*Daniel J. Porter, District Attorney, Dawn H. Taylor, Jeanette F. Shaw, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General*, for appellee.