## S05P1114. TOLLETTE v. THE STATE.
(621 SE2d 742)

THOMPSON, Justice.

Leon Tollette was indicted for malice murder, armed robbery, and other crimes, stemming from the shooting death of John Hamilton, a Brinks employee who, at the time, was picking up cash from a SouthTrust bank. The State served written notice of intent to seek the death penalty. On the first day of jury selection, Tollette pled guilty to one count each of malice murder, felony murder, armed robbery, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime and to two counts of aggravated assault.[1] At the conclusion of the sentencing trial, the jury

---

[1] Tollette committed the crimes on December 21, 1995; he was indicted by a Muscogee County grand jury on March 19, 1996, and was re-indicted on August 5, 1996. The State filed written notices of its intent to seek the death penalty on March 21, 1996, and on September 27,

fixed the sentence for malice murder at death after finding beyond a reasonable doubt that Tollette committed the murder during the commission of the capital felony of armed robbery and that he committed the murder for the purpose of receiving money or any other thing of monetary value. See OCGA § 17-10-30 (b) (2) and (4). For the reasons set forth below, we affirm.

1. The trial evidence established that Xavier Wommack had been planning a crime in Columbus, Georgia, and he invited Tollette to travel from Los Angeles, California, to join him. When Tollette arrived in Columbus, he and Wommack, along with a third man, Jakeith Robinson, finalized plans for the armed robbery of an armored truck. On December 21, 1995, the group followed a Brink's armored truck to the SouthTrust bank. Tollette sat waiting with a newspaper near the bank, Wommack stood guard across the street, and Robinson sat ready as the getaway driver. As victim John Hamilton returned from the bank to the Brink's truck with a money bag, Tollette approached Hamilton from behind and then fired at close range into his head, back, and legs, killing him. Carl Crane, the driver of the Brink's truck, and Cornell Christianson, the driver of a nearby Lummus Fargo truck, chased Tollette and fired shots at him as he fled with the money bag; Tollette returned fire at his pursuers. Wommack fired shots from across the street to aid in Tollette's escape; however, Wommack and Robinson ultimately drove away without Tollette. Robert Oliver, a police technician, responded to the radio call of a detective at the scene. When confronted by Oliver, Tollette attempted to fire at him and at a cadet who accompanied him, but all of the bullets in Tollette's revolver were already spent. Tollette threw down his revolver and surrendered.

Viewed in the light most favorable to the verdict, we find that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt the existence of the statutory aggravating circumstances in this case. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 17-10-35 (c) (2).

---

1996. The trial court properly merged the felony murder charge into the malice murder charge by operation of law. See *Malcolm v. State,* 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993); OCGA § 16-1-7 (a). The trial court sentenced Tollette to death for the malice murder, to a concurrent sentence of life for the armed robbery, to two concurrent sentences of twenty years for the aggravated assaults, to a concurrent sentence of five years for possession of a firearm by a convicted felon, and to a consecutive sentence of five years for the possession of a firearm during the commission of a crime. Tollette filed a motion for new trial on March 11, 1998, which he amended on October 20, 1998, and which was denied on January 28, 1999. Tollette filed a notice of appeal on February 25, 1999. The appeal was docketed in this Court three times but stricken for various reasons. The instant appeal was docketed on March 28, 2005, and was orally argued on June 20, 2005.

## Voir Dire Proceedings

2. Tollette contends that the trial court violated the mandate of *Morgan v. Illinois*, 504 U. S. 719 (112 SC 2222, 119 LE2d 492) (1992), by failing to question several jurors regarding their willingness to consider a sentence less than death and by, instead, allowing the parties to conduct such questioning. Contrary to Tollette's contention, we find that *Morgan* requires only that such questioning occur on request, and does not specify whether the trial court or the parties actually conduct the questioning.

3. Tollette argues that the trial court erred by refusing to excuse prospective jurors Glover, Grillo, Bigbee, Weekly, Wadsworth, Tillman, Bauer, Bone, and Wiggins based on their views of the sentencing options in a death penalty case. Tollette, similarly, complains that the trial court erred by excusing jurors Sankey, Bell, and Vining, over his objection, based on the court's determination that these jurors evidenced an inability or unwillingness to consider a death sentence.

Upon a proper motion, a juror should be excused based on his or her views on the death penalty, life imprisonment without parole, or life imprisonment with the possibility of parole if "the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Greene v. State*, 268 Ga. 47, 48 (485 SE2d 741) (1997) (quoting *Wainwright v. Witt*, 469 U. S. 412, 424 (II) (105 SC 844, 83 LE2d 841) (1985)). The same standard applies to a court's decision to qualify a prospective juror over defendant's objection. Id. This Court reviews a trial court's decision regarding a juror's qualification with deference to the trial court's application of this standard to the juror's voir dire responses. Id. See also *Raheem v. State*, 275 Ga. 87, 90-91 (5) (a) (560 SE2d 680) (2002) (discussing jurors' views regarding life with the possibility of parole). Upon review of the record, we find no abuse of discretion in the trial court's rulings in light of the views expressed by each of the jurors in question as to their willingness or unwillingness to consider the sentencing options available.

4. Pretermitting the State's argument that Tollette has not preserved the issue for appeal, we find that the trial court did not abuse its discretion in excusing prospective juror Laney based on a showing that he was a federal bankruptcy judge, that notice for various parties to appear before him during the week of Tollette's trial had already been sent out, and that his access to an available courtroom was limited. See OCGA § 15-12-1 (a); *McClain v. State*, 267 Ga. 378, 381-382 (1) (c) (477 SE2d 814) (1996) (noting a trial court's "broad discretion" in applying statutory exemptions from jury duty).

5. The trial court properly excused prospective juror Butler because the juror was the second cousin of Jakeith Robinson, Tollette's co-indictee. *Cambron v. State*, 164 Ga. 111 (137 SE 780) (1927).

## Sentencing Trial

6. The widow of the victim testified that "the grief [the victim's mother] carried over the murder of her son indirectly led to her death." A co-worker of the victim described the murder as "senseless, explicit, and apparently ruled by greed" and as showing "a blatant disregard for human life." Tollette waived his right to complain on appeal regarding this testimony, because he failed to object during the trial proceedings. See *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992) ("[e]rrors not raised in the trial court will not be heard on appeal").

7. Tollette argues that the trial court erred by allowing the jury to hear portions of his confession wherein he referred to his own gang affiliation. He has waived his right to raise this claim on appeal, however, by failing to raise this issue before the trial court. *Earnest*, 262 Ga. at 495.

Pretermitting whether the State was required to give pretrial notice of its intent to use Tollette's confession as non-statutory aggravating evidence at his sentencing trial, which confession would have been admissible in the guilt/innocence phase of his overall trial had he not pled guilty on the first day of jury selection, we find that he waived his right to complain about the lack of notice by failing to object. *Whatley v. State*, 270 Ga. 296, 300-301 (11) (509 SE2d 45) (1998) (citing *Earnest*, 262 Ga. at 495 (1)). But see also *Berryhill v. State*, 249 Ga. 442, 450-451 (11) (291 SE2d 685) (1982) (holding that pretrial notice of intent to re-use guilt phase evidence in the sentencing phase is not required).

8. Tollette argues that he is entitled to a new trial based on various allegedly improper closing arguments made by the prosecutor to which no objections were raised at trial. Tollette argues that he preserved his current objections to the prosecutor's allegedly improper arguments through a pretrial motion. Although we have held that an adverse ruling by a trial court to a motion in limine seeking to limit a specific argument at trial serves to preserve the issue of the argument's propriety for appellate review, see *Carruthers v. State*, 272 Ga. 306, 310 (2) (528 SE2d 217) (2000), we find that no such ruling was obtained in this case and, therefore, that the issue has been waived. *Earnest*, 262 Ga. at 495 (1). Nevertheless, if an argument by the State was improper in a death penalty case, this Court must examine whether the argument led to a death sentence "imposed under the influence of passion, prejudice, or any other arbitrary

factor." OCGA § 17-10-35 (c) (1). See *Gissendaner v. State*, 272 Ga. 704, 713-714 (10) (b) (532 SE2d 677) (2000). In making that examination, this Court determines whether any improper arguments in reasonable probability led to the imposition of a death sentence. Id.

(a) Tollette argues that the prosecutor improperly stated in his closing argument that a portion of Tollette's confession suggested his involvement in other robberies. Tollette contends that the issue of this allegedly improper argument is preserved for appeal because it falls within the mandate of OCGA § 17-8-75: "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same." Pretermitting whether a waiver occurred, we note that the argument in question did not violate the statute, because it simply urged the jury to draw a reasonable inference from Tollette's statement. See *Waldrip v. State*, 267 Ga. 739, 743 (5) (482 SE2d 299) (1997) (pretermitting issue of waiver of a claim based on OCGA § 17-8-75). See also *Messick v. State*, 276 Ga. 528, 529 (2) (580 SE2d 213) (2003) (arguing reasonable inferences is permissible under OCGA § 17-8-75). Because the argument was not improper, we need not address its effect on the jury's selection of a death sentence. See *Gissendaner*, 272 Ga. at 713-714 (10) (b).

(b) Tollette acknowledges that a prosecutor may argue the deterrent effect of a death sentence, see *Pace v. State*, 271 Ga. 829, 844 (32) (f) (524 SE2d 490) (1999), but he argues that the prosecutor's deterrence argument, coupled with the prosecutor's references to the fact that Tollette came from California to commit his crimes, collectively constituted improper argument. Because the prosecutor's references to Tollette's travel stressed the relevant issues of intent and premeditation, we find no impropriety, either alone or in conjunction with the prosecutor's argument regarding deterrence. Having concluded that the arguments, which were not objected to at trial, were not improper, we need not address their effect on the jury's sentence. See *Gissendaner*, 272 Ga. at 713-714 (10) (b).

(c) During his closing argument, the prosecutor argued that "the just punishment under a lot of religions would be death for what [Tollette did]." This argument was improper in that it emphasized the mandates of various, although unspecified, religions. See *Carruthers*, 272 Ga. at 308-311 (2). See also *King v. State*, 273 Ga. 258, 275 (35) (539 SE2d 783) (2000). However, because Tollette did not object to this argument at trial, we consider only whether it in reasonable probability led to the jury's selection of a death sentence. See *Gissendaner*, 272 Ga. at 713-714 (10) (b). We find that it did not.

9. Tollette complains about the prosecutor's reference to the possibility that Tollette waved at or blew a kiss at one of the victim's children as he or she left the witness stand. Tollette also asserts that

the prosecutor improperly argued that "[g]overnment supported, taxpayer funded, taxpayer maintained" prison was "too good" for Tollette. However, because the trial court sustained Tollette's objections to these arguments, he suffered no harm, even assuming the arguments were improper.

10. The prosecutor argued as follows:

I submit to you, ladies and gentlemen, prison is too good for this defendant. Prison for the rest of his life, prison for seven years and re-paroled, prison for whatever.

Tollette objected to this reference to "how many years" might pass before Tollette would be eligible for parole. The likelihood of parole is an improper subject matter for argument by counsel, except for the limited exception allowing counsel to refer to the significance of life without parole and life with eligibility for parole as those meanings are set out in OCGA § 17-10-31.1 (d). See *McClain*, 267 Ga. at 386 (5). Accordingly, we find that the trial court erred in overruling Tollette's objection to the prosecutor's argument. Nevertheless, we find that the argument ultimately proved entirely harmless in Tollette's case, given the fact that the jury had life without parole as an available sentence and was properly charged, through an original charge and an additional charge given during deliberations, that a sentence of life without parole would mean that Tollette would never be eligible for parole unless later adjudicated innocent.

11. In a pretrial hearing, the prosecution presented the victim impact evidence it intended to present at trial, including a short videotape of the victim alive in various settings. See *Turner v. State*, 268 Ga. 213, 214-215 (2) (a) (486 SE2d 839) (1997) (commending procedure whereby objections to victim impact testimony can be raised pretrial). At trial, the videotape was played without sound as the victim's oldest daughter described the scenes depicted. Tollette argues in this appeal, as he argued in the pretrial hearing, that the videotape did not fit the statutory description of admissible victim impact evidence and that the videotape could not be subjected to cross-examination. See OCGA § 17-10-1.2. OCGA § 17-10-1.2 (a) (1) permits "*evidence* from the family of the victim, or such other witness having personal knowledge of the victim's personal characteristics." (Emphasis supplied.) We find that such "evidence" encompasses a silent videotape of the victim in life. We also find that the language in OCGA § 17-10-1.2 (a) (1) providing that "[s]uch evidence shall . . . be subject to cross-examination" is satisfied where the person identifying a videotape of the victim is subject to cross-examination. Id. Tollette's additional argument that presentation of the videotape violated the statute's requirement that victim impact evidence not be

used "to inflame or unduly prejudice the jury" was not preserved for appeal by objection in the trial court. Id. See *Earnest*, 262 Ga. at 495 (1). Upon consideration of the issues preserved for our review on appeal, we find no violation of OCGA § 17-10-1.2; therefore, we need not address the provision that "[n]o sentence shall be invalidated because of failure to comply with the provisions of [that] Code section." OCGA § 17-10-1.2 (d).

12. The trial court did not abuse its discretion in replaying Tollette's audiotaped confession for the jury in open court upon the jury's request. *Roberts v. State*, 278 Ga. 541, 543-544 (4) (604 SE2d 500) (2004); *Cromartie v. State*, 270 Ga. 780, 788 (20) (514 SE2d 205) (1999). Tollette has failed to show any special circumstance in his case that made it "unjust to allow the jury" to rehear his confession. *Watkins v. State*, 273 Ga. 307, 309-310 (3) (540 SE2d 199) (2001). His guilty plea is not, as he contends, such a special circumstance, because any "residual doubt" regarding his guilt remained a relevant issue for the jury's sentencing deliberations, despite his adjudication of guilt. See *Head v. Ferrell*, 274 Ga. 399, 405 (V) (A) (554 SE2d 155) (2001).

Tollette also complains that the jury had the audiotape of his confession in the jury room during their deliberations. See *Fields v. State*, 266 Ga. 241, 243 (2) (466 SE2d 202) (1996). But because the jury had no tape player in the jury room, he obviously suffered no harm. Furthermore, this issue is waived because he did not object to the procedure at trial. *Earnest*, 262 Ga. at 495 (1).

13. Tollette claims that his trial counsel rendered constitution-ally ineffective assistance. To prevail in his claim, Tollette must demonstrate both that his counsel performed deficiently under con-stitutional standards and that the deficiency in reasonable probabil-ity changed the outcome of his trial. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783-784 (1) (325 SE2d 362) (1985).

Tollette outlines the testimony and evidence presented by the State at trial and complains that "hardly any objections" were raised by trial counsel; however, this generalized complaint fails entirely to set out what particular aspects of counsel's performance were defi-cient and why. His allegation that the trial court "had to rescue the defense attorney" by excluding sua sponte certain victim impact testimony the prosecutor had planned to present obviously cannot show that Tollette was prejudiced, as that testimony was never heard by the jury.

Tollette complains that his trial counsel did not prepare ad-equate mitigation evidence. Tollette's lead counsel testified that he was appointed to Tollette's case more than a year before trial,

interviewed potential witnesses, arranged for a mental health examination by a pair of psychologists, arranged for an examination by a neuropsychologist, hired a "mitigation specialist," consulted with lawyers expert in death penalty cases, and obtained and weighed the usefulness of school and prison records. Counsel did not believe that the psychological experts offered anything helpful to Tollette's case, and, in counsel's appraisal, Tollette's school and prison records were also unhelpful.

The investigation by counsel and the mitigation specialist led to a conclusion that Tollette's mother and one of his sisters could offer helpful testimony. Although Tollette's mother testified at trial, Tollette argues that counsel performed deficiently by failing to secure the attendance of his sister through an interstate subpoena. See OCGA § 24-10-91 et seq. Pretermitting the question of whether counsel's failure to compel the attendance of the witness has been shown to be deficient performance, we conclude that Tollette did not suffer sufficient prejudice to warrant relief. The only testimony in the hearing on the motion for new trial regarding the content of the sister's potential testimony showed that it would have been merely a "reiteration of the mother's testimony."

Tollette notes with disapproval that his lead counsel stated in his closing argument, "I have great loathing for my own client." However, as trial counsel's testimony in the motion for new trial hearing indicated, this statement was made as part of a strategy to appear "credible to the jury." Counsel's argument continued by emphasizing that the jury was not required to impose a death sentence in order to "keep [Tollette] out of society" and encouraging the jurors not to impose a death sentence so that they would not "always think of [themselves] as someone who put another person to death when [they] didn't have to." We find that trial counsel's strategy in forging his overall argument was not unreasonable under the circumstances of the case.

Having reviewed Tollette's arguments and the record, we conclude that the trial court did not err in denying Tollette's claim of ineffective assistance of trial counsel.

14. The evidence in this case shows that Tollette carefully planned his crimes and killed without mercy for monetary gain. We conclude, considering both the crime and the defendant, that the death sentence imposed for the murder in this case was neither excessive nor disproportionate to the penalties imposed in similar cases in Georgia. See OCGA § 17-10-35 (c) (3). The cases cited in the Appendix support this finding in that each also involved an intentional killing in furtherance of an armed robbery or an intentional killing committed for the purpose of receiving money or other things of value. See OCGA § 17-10-35 (e).

15. We find that Tollette's death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. See OCGA § 17-10-35 (c) (1).

*Judgment affirmed. All the Justices concur, except Benham, J., who concurs in judgment only as to Division 10.*

APPENDIX.

*Perkinson v. State*, 279 Ga. 232 (610 SE2d 533) (2005); *Franks v. State*, 278 Ga. 246 (599 SE2d 134) (2004); *Braley v. State*, 276 Ga. 47 (572 SE2d 583) (2002); *Arevalo v. State*, 275 Ga. 392 (567 SE2d 303) (2002); *Raheem v. State*, 275 Ga. 87 (560 SE2d 680) (2002); *Lucas v. State*, 274 Ga. 640 (555 SE2d 440) (2001); *Rhode v. State*, 274 Ga. 377 (552 SE2d 855) (2001); *Fults v. State*, 274 Ga. 82 (548 SE2d 315) (2001); *King v. State*, 273 Ga. 258 (539 SE2d 783) (2000); *Jones v. State*, 273 Ga. 231 (539 SE2d 154) (2000); *Esposito v. State*, 273 Ga. 183 (538 SE2d 55) (2000); *Gissendaner v. State*, 272 Ga. 704 (532 SE2d 677) (2000); *Lee v. State*, 270 Ga. 798 (514 SE2d 1) (1999); *Cromartie v. State*, 270 Ga. 780 (514 SE2d 205) (1999); *Whatley v. State*, 270 Ga. 296 (509 SE2d 45) (1998); *Jenkins v. State*, 269 Ga. 282 (498 SE2d 502) (1998); *DeYoung v. State*, 268 Ga. 780 (493 SE2d 157) (1997); *Jones v. State*, 267 Ga. 592 (481 SE2d 821) (1997); *Carr v. State*, 267 Ga. 547 (480 SE2d 583) (1997); *Crowe v. State*, 265 Ga. 582 (458 SE2d 799) (1995); *Mobley v. State*, 265 Ga. 292 (455 SE2d 61) (1995); *Ledford v. State*, 264 Ga. 60 (439 SE2d 917) (1994); *Ferrell v. State*, 261 Ga. 115 (401 SE2d 741) (1991).

DECIDED NOVEMBER 7, 2005 —
RECONSIDERATION DENIED DECEMBER 2, 2005.

*James A. Elkins, Jr., Michael D. Reynolds*, for appellant.
*J. Gray Conger, District Attorney, David R. Helmick, Assistant District Attorney, Thurbert E. Baker, Attorney General, Christopher D. Helms, Assistant Attorney General*, for appellee.