**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 18, 2015**

# In the Court of Appeals of Georgia

A15A1072. ROBINSON v. THE STATE.                     DO-040 C

DOYLE, Chief Judge.

In June 1998, Jakeith Robinson, the alleged get-away driver in the robbery of an armored car driver, was indicted and tried for murder,[1] felony murder,[2] armed robbery,[3] two counts of aggravated assault,[4] possession of a firearm by a convicted felon,[5] and possession of a firearm during the commission of a felony.[6] At the

---

[1] OCGA § 16-5-1 (a)

[2] OCGA § 16-5-1 (c).

[3] OCGA § 16-8-41 (a).

[4] OCGA § 16-5-21 (b) (1) & (b) (2).

[5] OCGA § 16-11-131 (b).

[6] OCGA § 16-11-106 (b) (1).

conclusion of the trial,[7] the jury returned not guilty verdicts as to the murder, felony murder, and both aggravated assault charges, but could not reach a verdict on the charges of armed robbery and possession of a firearm during the commission of a felony.

Thereafter, in September 1999, Robinson was tried as a co-defendant for armed robbery and the weapons charge. Robinson unsuccessfully moved for severance of the trials, arguing that based on the State's arguments that he was a co-conspirator and/or party to the armed robbery, the issue was precluded from retrial. During the trial, co-defendant Xavier Womack was tried for murder, felony murder, armed robbery, two counts of aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon, while Robinson was retried on armed robbery and possession of a firearm during the commission of a crime.[8] The jury found Robinson guilty of armed robbery and

---

[7] In the 1998 trial, pursuant to OCGA § 17-8-4 (a), Robinson was tried separately from his co-defendants, Leon Tollette and Xavier Womack, because the State sought the death penalty against those defendants.

[8] For our review of Womack's appeal, see *Womack v. State*, 273 Ga. App. 300 (614 SE2d 909) (2005).

acquitted him of possession of a firearm during a crime and possession of a firearm by a convicted felon. Robinson was sentenced to life imprisonment.

Robinson filed a motion for new trial and two amended motions for new trial, which motions ultimately were denied by the trial court in September 2001.

Robinson filed his notice of appeal in 2001. After waiting 14 years for his appeal, Robinson now argues that (1) the State was barred by the doctrines of issue preclusion, collateral estoppel, and double jeopardy from arguing that he was a party to the crime[9]; (2) the trial court abused its discretion by denying his motion to sever his trial from the trial of his co-defendant, Womack[10]; and (3) the trial court abused its discretion by prohibiting him from informing the jury of his acquittal of the murder and aggravated assault charges for which Womack was being tried during the joint trial. For the reasons that follow, we reverse.

---

[9] Throughout both trials and in most of the pleadings, the parties refer to conspirator and party to the crime interchangeably. Although they are treated differently under Georgia law, Robinson was not actually charged with conspiracy, therefore, we address these issues as if the terms refer only to party to a crime as defined in Georgia jurisprudence.

[10] Tollette is currently awaiting execution after pleading guilty to the charges and being sentenced to the death penalty. See *Tollette v. State*, 280 Ga. 100 (621 SE2d 742) (2005), *Tollette v. Warden*, Case No. 14-00110 (M. D. Ga. 2014) (denying Tollette's motion for habeas corpus).

3

1. As an initial matter, we note that Robinson's conviction was entered on September 15, 1999, and his motion for new trial was denied on September 28, 2001. Robinson's timely notice of appeal was filed on October 1, 2001, and three years later, in an August 2004 hearing on Robinson's motion to amend sentence, the trial transcripts had been completed, but the appeal remained to be docketed. Staggeringly, ten and a half additional years elapsed before the record was docketed with this Court, and no explanation for the extreme delay appears in the record.[11] We take yet another opportunity to remind the bench and bar that

> [t]his type of post-conviction, pre-appeal delay puts at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial. It is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay. That duty unfortunately was not fulfilled in this case.[12]

---

[11] We note that Robinson dismissed his appellate attorney and proceeded pro se at the hearing on the motion to amend his sentence, which perhaps caused some of the delay, but did not justify ten years' worth.

[12] (Punctuation omitted.) *Waye v. State*, 326 Ga. App. 202, 202-203 (1) (756 SE2d 287) (2014), quoting *Morgan v. State*, 290 Ga. 788, 789, n. 2 (725 SE2d 255) (2012). See also *Shank v. State*, 290 Ga. 844, 849 (5) (c) (725 SE2d 246) (2012); *Murphy v. State*, 290 Ga. 459, n. 2 (722 SE2d 51) (2012); *Hill v. State*, 290 Ga. 493, n. * (722 SE2d 708) (2012).

We now are faced with an individual who has been in prison for over 15 years for a conviction that, as we explain in the following division, must be reversed.

2. Robinson argues that the trial court erred by overruling his objection to the State's attempt to prove armed robbery via a party to the crime theory because the issue was barred from re-litigation under collateral estoppel, res judicata, or double jeopardy based on the acquittal of Robinson under this theory in the first trial. We agree.[13]

> To conduct an issue-preclusion analysis, courts examine the verdict and trial record to determine the facts that the jury necessarily decided in returning its verdict of acquittal and then determine whether the previously determined facts constituted an essential element of the second offense. The doctrine of collateral estoppel will not bar a retrial unless the record of the prior proceeding affirmatively demonstrates that

---

[13] We note that Robinson did not file a written plea in bar prior to the second trial, however, he objected at the second trial (i) to the State's use of the alleged co-conspirator's testimony to establish that Robinson was a party to the crime, and (ii) to the trial court's prohibition of him bringing out the fact that he was acquitted of numerous charges in the first trial. At that time, Robinson argued that the evidence in question violated collateral estoppel principals because he had been acquitted of being a party to the crime in the first trial. He also raised this issue at his motion for new trial. The State does not assert that Robinson waived this argument by failing to file a written plea in bar prior to the second trial, and we hold that this objection was sufficient to raise the issue of collateral estoppel of the party to a crime theory at trial. See *Joya v. United States*, 53 A.3d 309, 317-320 (III) (D. C. App. 2012); compare with *United States v. Whitfield*, 590 F.3d 325, 329 (VIII) (5th Cir. 2009).

an issue involved in the second trial was definitely determined in the former trial; the possibility that it may have been does not prevent the relitigation of that issue.[14]

In December 1995, John Hamilton was transferring money from a bank to his armored car when Tollette shot him in the back of the head, grabbed a bag of money, and attempted to escape across the street. Hamilton died at the scene. While Tollette was attempting to flee, the driver of the armored car and a security guard unconnected with the armored car separately fired at Tollette, who dropped the bag of money, and another individual returned fire at the armored car driver from the direction in which Tollette had fled.

The security guard chased Tollette and while reloading his weapon, saw a dark blue car speed away from the scene. The security guard saw another individual across the street who ran toward the area the blue car would later leave, and he heard a door slam before the car sped away. The car did not pick up Tollette, and he was apprehended near the scene. Tollette told police that he had been staying at a location on Sims Street, and officers executed a search warrant for the residence, where they

---

[14] (Citations and punctuation omitted.) *Roesser v. State*, 294 Ga. 295, 297 (751 SE2d 297) (2013).

found Womack, Womack's brother Brian, and another individual named Ashley. Police only arrested Womack and released Brian and Ashley. Robinson was arrested in January 1996 at a relative's home in Auburn, Alabama.

During Robinson's first trial, the State proceeded against him under theories that he conspired with Tollette and Womack or was a party to the crimes, asserting that although no one saw Robinson at the scene of the shooting, he was the getaway driver and had plotted the robbery with his co-defendants, making him criminally liable for their actions at the scene of the crime.[15] Although Robinson did not testify during the trial, his defense was that although he was friends with Womack and Tollette, he was not involved in the incident at all, that only one witness testified that there may have been three men in a car together prior to the incident but no one else

---

[15] See OCGA § 16-2-20 (a). "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. . . . [O]ne is concerned in the commission of a crime if he, among other things, intentionally aids or abets in the commission of the crime. While an individual's presence when a crime is committed will not be sufficient, in and of itself, to convict that individual as a party to the crime, if the individual is present and assists in the commission of the crime or shares in the criminal intent of the actual perpetrator of the crime, the individual may be convicted as a party to the crime. Further, criminal intent may be inferred from conduct before, during, and after the commission of the crime." (Punctuation omitted.) *Joyner v. State*, 280 Ga. 37, 39 (1) (622 SE2d 319) (2005) (upholding convictions for felony murder, armed robbery, and burglary based on defendant's actions as a getaway driver).

7

testified that three individuals were at the scene, and that other individuals were found with Womack and in the vicinity of multiple weapons at the time officers arrested Womack.

At the first trial, one witness saw three men sitting in a blue Ford Mustang near the scene before the crime, but did not see the vehicle leave, could not identify the occupants, and did not see any of the men commit the crimes. Robinson's girlfriend at the time testified that on the morning of the incident, Robinson went out to get their child diapers, came home, left again, and then returned with Womack, and the two men were acting upset. She testified that Robinson said that he, Womack, and Tollette tried to rob an armored car, a man was shot, and Tollette was left at the scene. In her initial statement to police, however, she stated that after going out to get diapers, Robinson had given his car keys to someone else, that he later left the apartment and did not return for the rest of the day, and that he never admitted involvement in the incident.

On December 25, a blue Mustang belonging to Robinson was impounded by officers from Linell Denson's home in Seale, Alabama. Denson testified that Robinson called him sometime before Christmas in December 1995 to ask that Denson fix his car, which would not go into first gear; after Denson and Robinson

8

traveled from Robinson's home in Phenix City, Alabama, to Seale, Alabama, Denson transported Robinson back to Phenix City. Officers came to Denson's home on Christmas Day and impounded the car, which date Denson testified was approximately three days to one week after Robinson had brought the car to him, but Denson could not specifically recall the exact date.

At the close of evidence, the jury acquitted Robinson of the murder, felony murder, and both aggravated assault charges, but they failed to reach a verdict on the charges of armed robbery and possession of a firearm during a felony; the bifurcated felon in possession of a weapon charge was not presented.

At the second trial, the State again argued that Robinson was a party to the crime of armed robbery and conspired to commit the crime by acting as the getaway driver for Womack and Tollette. Prior to trial, the State moved to rejoin Robinson's prosecution with that of Womack because Tollette had been sentenced to death and the State had waived the death penalty as to Womack and Robinson. During the hearing on the issue of severing Robinson's second trial from Womack's first, the State argued that "the same evidence would be used against both of them for the most part. The evidence would show that they were co-conspirators, and both participated in the murder and armed robbery, not as the actual killers, but as co-conspirators."

During the trial, the State attempted to compel Tollette to testify to Robinson's involvement as a conspirator/party to the crime, and it again argued that Robinson was guilty of armed robbery under those theories. The State also requested charges on conspiracy and party to a crime, just as it had in Robinson's first trial.

When, as here,

a previous judgment of acquittal was based upon a general verdict, as is usually the case, a court must ask whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. When making this determination, a court must examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter. This inquiry must be set in a practical frame, and a court is not to conduct its analysis with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.[16]

"[Moreover, in the context of a mixed-verdict case,] the jury's failure to reach a verdict on certain counts [is] a nonevent that ha[s] no bearing on the determination of what issues had been determined by virtue of the verdicts that were reached."[17]

---

[16] (Citations and punctuation omitted.) *United States v. Ohayon*, 483 F.3d 1281, 1286 (III) (A) (1) (11th Cir. 2007).

[17] (Punctuation omitted.) *Roesser*, 294 Ga. at 297, quoting *Yeager v. United States*, 557 U. S. 110 (129 SCt 2360, 174 LE2d 78) (2009). See also *Ashe v. Swenson*, 397 U. S. 436, 444 (90 SCt 1189, 25 LE2d 469) (1970).

In its meager response brief, the State does not engage in any analysis of whether the jury necessarily decided the issue of whether Robinson was a party to the crime of armed robbery in the first trial as explained by *Roesser* or *Ashe*.[18] Instead, the State summarily argues that (1) it did not hold back in charges or counts in an attempt to prosecute at a later date; (2) the armed robbery count was indicted by a grand jury and not a lesser included count; and (3) the armed robbery was not a re-indictment of a previously un-included lesser charge after the first acquittal. None of those arguments affects our issue-preclusion analysis.

When Robinson raised the issue of issue preclusion and collateral estoppel during the second trial, the trial court responded that "conspiracy [is not necessary] to commit armed robbery." The State, however, did not attempt to prove that Robinson committed armed robbery in any other way than via the same theory propounded during the first trial. At the motion for new trial, the court denied Robinson's motion as to this issue, finding that the jury could have determined that Robinson did not conspire to commit aggravated assault or murder, but he did conspire to commit armed robbery. This was a conflation of the issue of inconsistent

---

[18] *Ashe*, 397 U. S. at 444.

11

verdicts with issue preclusion and collateral estoppel of the party to a crime theory.

As Judge Pryor explained in *Ohayon*,

> [t]he problem with this argument is that it presumes that the relevant standard is a subjective one — whether [Robinson's] jury grounded its verdict on an irrational understanding of [party to a crime.] *Ashe* requires that we apply an objective standard and ask 'whether a rational jury' exposed to the same 'pleadings, evidence, charge, and other relevant matter' 'could have grounded its verdict upon an issue other than' the one [Robinson] seeks to foreclose from consideration. Because we ask what a rational jury would have done, the possibility that the jury's verdict rested upon error plays no part in our analysis. A rational jury could not have grounded its verdict on a misunderstanding of [participation in a conspiracy] or on any other mistake. Because collateral estoppel is grounded in the Double Jeopardy Clause of the Fifth Amendment the government is barred from correcting inconsistent verdicts by a single jury, even those based on mistake, compromise, or lenity. The possibility of jury nullification also plays no part in collateral estoppel analysis.[19]

Thus, the fact that the first jury could have returned inconsistent verdicts and convicted Robinson of armed robbery while acquitting him of the charges arising

---

[19] (Citations and punctuation omitted.) *Ohayon*, 483 F.3d at 1287-1288 (III) (A) (2), citing *United States v. Brown*, 983 F.2d 201, 203 (11th Cir. 1993) ("While the possibility of jury nullification may influence the strategy of trial lawyers, it cannot enter into the analysis of courts making collateral estoppel inquiries.").

from Hamilton's death during the robbery because it decided to nullify on the murder in the face of the clear requirement it convict under the party to a crime instruction if it found that he participated in the robbery as the getaway driver, we do not accept such an inconsistency as rational under the lens of issue preclusion.[20] The only rational conclusion from the first trial is that the jury determined that Robinson was not a party to the crimes, and therefore, the State could not propound these theories against him in the second trial for armed robbery.

3. Based on our conclusion in Division 2, we need not address Robinson's remaining enumerations.

*Judgment reversed. Phipps, P. J., and Boggs, J., concur.*

---

[20] See *Ohayon*, 483 F.3d at 1287-1288 (III) (A) (2).

13