**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 21, 2020**

# In the Court of Appeals of Georgia

A19A1720. WOMACK v. THE STATE.

GOBEIL, Judge.

In 1999, Xavier Womack was convicted by a jury of armed robbery, and he was given a life sentence. *Womack v. State*, 273 Ga. App. 300, 300 (614 SE2d 909) (2005). In 2005, we affirmed his convictions. Id. In 2018, in Case No. A18D0444, we granted Womack's application for discretionary appeal. Womack now appeals from the trial court's denial of what we construe as an extraordinary motion for new trial. For the reasons that follow, we affirm.

In December 1995, Xavier Womack, Jakeith Robinson, and Leon Tollette robbed an armored Brinks truck, and Tollette shot one of the guards in the head, killing him. *Womack*, 273 Ga. App. at 301 (1). Guards shot at Tollette, and Womack and Tollette returned fire as they ran away. Id. Womack and Robinson fled the scene,

leaving Tollette behind to be apprehended by police. Id. Womack and Robinson were arrested a few days later. Id. at 302 (1).

All three men were charged based on the incident. Tollette pleaded guilty to several charges, including malice murder, and he was sentenced to death after a sentencing trial. *Tollette v. State*, 280 Ga. 100, 100-101 (621 SE2d 742) (2005). In June 1998, Robinson alone was tried for malice murder, felony murder, armed robbery, possession of a firearm by a convicted felon, possession of a firearm during the commission of a felony, and two counts of aggravated assault. *Robinson v. State*, 334 Ga. App. 646, 646 (780 SE2d 86) (2015). The jury acquitted Robinson of malice murder, felony murder, and both aggravated assault charges, but could not reach a verdict on the armed robbery and firearm charges. Id.

Subsequently, in September 1999, Robinson was re-tried on the armed robbery and firearm charges alongside Womack, who faced charges of malice murder, felony murder, armed robbery, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, and two aggravated assault charges. *Robinson*, 334 Ga. App. at 646. Robinson sought to have his trial severed from Womack's but was unsuccessful. Id.

2

As described by this Court, the evidence in the 1999 trial showed that, on December 20, 1995, Womack, his cousin Robinson, and a friend, Tollette, were seen together in the lobby of a Barnett Bank in Columbus, Georgia, as the bank was closing for the day. *Womack*, 273 Ga. App. at 301 (1). The next morning, Robinson's blue Mustang followed a Brinks truck to a parking lot near the Barnett Bank. Id. One of the Brinks guards entered a nearby Suntrust Bank, while the other guard waited in the armored truck. Id. Tollette waited in front of the Barnett bank, Womack watched the Brinks truck from across the street, and Robinson stayed in the car. Id. As the guard returned to the truck and opened the door, Tollette ran up and shot the guard four times in the head at close range, killing him. Id. Another bank guard who was in the area witnessed Tollette murder the Brinks guard. Id.

After the killing, there was gunfire in all directions. *Womack*, 273 Ga. App. at 301 (1). Witnesses saw Womack, across the street from the Brinks truck, shooting towards the truck and then running away from the scene. Id. The other Brinks guard and another bank guard began shooting at Tollette, who was running away with a bag of money towards Robinson's Mustang. Id. Before Tollette could reach the car, Robinson drove away, and Tollette was apprehended at the scene. Id. Crime scene investigators recovered numerous shell casings and spent bullets from the scene,

3

including several Winchester Western nine millimeter shell casings in a parking lot across the street from the Brinks truck. Id. at 301-302 (1).

After Womack and Robinson left the scene, they went to Robinson's girlfriend's apartment, which was in the direction that the blue Mustang was seen traveling when it fled. *Womack*, 273 Ga. App. at 302 (1). Robinson's girlfriend testified that the two men were out of breath, "shaken and nervous" when they arrived. Id. Robinson told his girlfriend: "[W]e just tried to rob a Brinks truck and someone was shot and [Tollette] got caught." Id. A few moments later, someone knocked on the apartment door, and Womack jumped up and pulled out a gun. Id. The men left the apartment a short time later. Id.

In the meantime, investigators interviewed Tollette. *Womack*, 273 Ga. App. at 302 (1). The day after the robbery, police executed a search warrant for Tollette's house, where Womack also lived. Id. Police found a box of nine millimeter cartridges missing several rounds of ammunition, which were consistent with four spent bullets found at the crime scene. Id. Police also found fibers in Womack's house that were consistent with fibers found in Robinson's Mustang. Id. After Robinson and Womack were arrested, Robinson confided in his cellmate details about the robbery, including admitting that he was the getaway driver. Id. Robinson asked his cellmate to tell

Womack to "[b]e strong." Id. at 303 (1). According to the cellmate, Womack replied: "[T]hey ain't got me, they can't identify me. They ain't got nothing." Id.

At the conclusion of the 1999 trial, the jury found Robinson guilty of armed robbery, and acquitted him of the firearm charges. *Robinson*, 334 Ga. App. at 646. The jury found Womack guilty of only armed robbery, and acquitted him of all other charges. *Womack*, 273 Ga. App. at 300 & n.1.

Womack appealed following the denial of his new trial, and we affirmed his conviction. *Womack*, 273 Ga. App. at 300. As relevant here, in his direct appeal, Womack first asserted that the evidence was insufficient to support his conviction. Id. at 300 (1). We disagreed, stating the facts as recounted above, and finding that the evidence was sufficient to support the jury verdict. Id. at 300-303 (1). Second, Womack argued that the trial court erred in admitting, under the co-conspirator exception to the rule against hearsay, the testimony of Robinson's girlfriend regarding Robinson's statements to her that he and Womack had tried to rob a Brinks truck. Id. at 303 (2) (a). We rejected Womack's argument, concluding that the evidence presented at trial was sufficient to show the existence of an ongoing conspiracy between Womack and Robinson at the time of Robinson's statement to his girlfriend.

5

Id. at 304 (2) (a). Accordingly, the statement was admissible under the then-effective co-conspirator exception to the rule against hearsay.[1] Id.

Robinson also appealed his conviction. *Robinson*, 334 Ga. App. at 646. Although Robinson's notice of appeal was filed in 2001 following the denial of his motion for new trial, we did not decide his appeal until 2015.[2] Id. at 647. In Robinson's case, using the doctrines of collateral estoppel and issue preclusion, we held that because Robinson was acquitted of malice murder, felony murder, and aggravated assault in his first trial, the "only rational conclusion from the first trial is that the jury determined that Robinson was not a party to the crimes, and therefore, the State could not propound these theories against him in the second trial for armed robbery." Id. at 651-652 (2). Accordingly, we reversed Robinson's armed robbery conviction. Id.

---

[1] Georgia's evidence code was substantially revised effective January 1, 2013. Ga. Laws 2011, Act 52, § 2. In Womack's appeal, we relied upon the previous version of the co-conspirator exception to the hearsay rule, which was codified at OCGA § 24-3-5 (1999), as Womack's trial occurred in 1999. The revised co-conspirator hearsay exception is now codified at OCGA § 24-8-801 (d) (2) (E).

[2] Robinson's appeal was filed in October 2001 but was not docketed with this Court for more than 10 years, and we noted that "no explanation for the extreme delay appear[ed] in the record." *Robinson*, 334 Ga. App. at 647.

Following the reversal of Robinson's conviction, in February 2017, Womack filed an extraordinary motion for new trial.[3] Womack argued that, pursuant to this Court's decision in *Robinson*, Robinson was not a co-conspirator in the robbery, and therefore his statements to his girlfriend should not have been admissible via the co-conspirator exception to the rule against hearsay. Following a hearing, the trial court denied Womack's motion, citing *United States v. Cravero*, 545 F2d 406, 418-419 (VI) (5th Cir. 1976), which held that a previous or subsequent acquittal of a co-conspirator does not affect the admissibility of his or her hearsay statements in the trial of a co-defendant, as the government's burden of proving the conspiracy is independent of and lower than the burden of proving the co-conspirator's guilt.

Womack filed an application for discretionary appeal, which we granted. See Case No. A18D0444 (granted May 21, 2018). He then filed the instant appeal.

---

[3] Womack's motion was labeled an "Extraordinary Motion to Set Aside Defendant's Conviction Based on Reversal of Co-Defendant's Conviction[.]" However, "[a] motion to set aside the judgment and sentence is not an appropriate remedy in a criminal case[.]" *Bishop v. State*, 117 Ga. App. 93, 93 (1) (159 SE2d 477) (1968). Moreover, on appeal, Womack explicitly seeks a new trial. Accordingly, we construe his motion as an extraordinary motion for new trial. See OCGA § 5-5-41; *Bowen v. State*, 144 Ga. App. 329, 333 (241 SE2d 431) (1977) ("[T]here is no magic in nomenclature, and in classifying pleadings we will construe them to serve the best interests of the pleader judging the pleading by its function rather than by its name.") (citation and punctuation omitted).

Womack argues that because this Court found that Robinson was not a co-conspirator in *Robinson*, 334 Ga. App. at 651-652 (2), his conviction must be reversed, as Robinson's girlfriend's testimony about what Robinson told her after the robbery does not qualify under the co-conspirator exception to the rule against hearsay. Accordingly, Womack argues, he is entitled to a new trial. We disagree.

We review a trial court's decision to deny an extraordinary motion for new trial for an abuse of discretion. *State v. Hill*, 295 Ga. 716, 718 (763 SE2d 675) (2014). There is "a significant difference in consideration of a motion for new trial and an extraordinary motion for new trial; extraordinary motions for new trial are not favored, and a stricter rule is applied to an extraordinary motion for a new trial based on the ground of newly available evidence than to an ordinary motion on that ground." Id. (citation and punctuation omitted).

Under the co-conspirator hearsay exception as it appeared at the time of Womack's trial,"[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." OCGA § 24-3-5 (1999). "The co-conspirator hearsay exception permits admission of the hearsay statement of a co-conspirator, made in the course of the conspiracy, so long as a prima facie case of conspiracy has been established apart

8

from the hearsay statement itself." *Franklin v. State*, 298 Ga. 636, 639 (2) (784 SE2d 359) (2016) (punctuation omitted). "Such independent prima facie evidence of a conspiracy need not be adduced prior to the admission of the hearsay statement at trial, so long as sufficient evidence thereof is presented prior to the close of evidence." Id. "The question of the existence of a conspiracy is ultimately for the jury to determine[.]" *Lewis v. State*, 311 Ga. App. 54, 57 (2) (714 SE2d 732) (2011) (citation and punctuation omitted).

There clearly was independent prima facie evidence at trial of a conspiracy between Womack and Robinson. The two men were seen together at the bank the day before the robbery, and again at the scene of the robbery, and Robinson drove Womack away from the crime scene. At the time when Robinson made the incriminating hearsay statements to his girlfriend in her apartment, the two men were still attempting to avoid detection, so the conspiracy endured. See *Franklin*, 298 Ga. at 639 (2) ("For purposes of the hearsay exception, a conspiracy is deemed to endure so long as the parties thereto attempt to conceal either the crime itself or the identity of the perpetrators."). Accordingly, the jury's finding that a conspiracy existed between the two men was supported by independent prima facie evidence.

The specific question of whether a subsequent acquittal of the co-conspirator who made the hearsay statements retroactively affects a co-defendant's trial is a matter of first impression for this Court. However, we find the Eleventh Circuit's holding on this issue persuasive. *Perez v. State*, 283 Ga. 196, 198 (657 SE2d 846) (2008) ("The decisions of the Eleventh Circuit are not binding on this Court, but they are persuasive authority."). The Eleventh Circuit, following the Fifth Circuit, has held that "the admission of testimony under the co-conspirator exception to the hearsay rule is not rendered retroactively improper by subsequent acquittal of the alleged co-conspirator." *United States v. Hernandez-Miranda*, 78 F3d 512, 513 (11th Cir. 1996) (punctuation omitted), quoting *Cravero*, 545 F2d at 419.[4] Thus, we conclude

---

[4] The holding in *Cravero* was based on the reasoning that the government's burden of proving the conspiracy for purposes of the hearsay exception is independent of and lower than its burden of proving the co-conspirator's guilt. *Cravero*, 545 F2d at 419. Thus, the evidence supporting the admission of co-conspirator hearsay evidence must be considered separately from the issue of the co-conspirator's guilt or innocence. Id.

At least two other Circuit Courts have explicitly adopted this holding from *Cravero*. See *United States v. Carroll*, 860 F2d 500, 506 (1st Cir. 1988); *United States v. Anthon*, 648 F2d 669, 678 (10th Cir. 1981). And several other Circuit Courts have similarly held that a co-conspirator need not be convicted of any conspiracy offense for his statements to be admissible under the co-conspirator hearsay exception. See *United States v. Stanchich*, 550 F2d 1294, 1299-1300 (2d Cir. 1977); *United States v. Gil*, 604 F2d 546, 549 (7th Cir. 1979); *United States v. Bass*, 472 F2d 207, 213-214 (8th Cir. 1973); *United States v. Peralta*, 941 F2d 1003, 1006-1007 (9th Cir. 1991).

10

that the court did not err in admitting Robinson's girlfriend's testimony about statements made by Robinson. The fact that Robinson's conviction subsequently was reversed based on the doctrines of issue preclusion and collateral estoppel does not negate the evidence presented at Womack's trial establishing that a conspiracy existed for purposes of the hearsay exception. Accordingly, the trial court did not abuse its discretion in denying Womack's extraordinary motion for new trial.

Pretermitting whether the hearsay statements were admissible, any error in the admission of the contested hearsay evidence was harmless as it was cumulative of other properly-admitted evidence of armed robbery. See *Hatcher v. State*, 320 Ga. App. 366, 374 (2) (739 SE2d 805) (2013) (even if hearsay statements were erroneously admitted, error was harmless beyond a reasonable doubt where such statements were cumulative of properly admitted evidence). At least one witness saw Womack shooting at the Brinks truck from across the street and fleeing the scene. *Womack*, 273 Ga. App. at 301 (1). Spent bullets recovered from the place where Womack was seen during the robbery matched bullets found at Womack's home. Id. at 301-302 (1). Womack made incriminating statements to an inmate indicating that he was involved with Robinson in the armed robbery. Id. at 303 (1). Finally, Robinson's girlfriend, without referencing what Robinson told her, also testified that

11

the Robinson and Womack were together shortly after the robbery and appeared out of breath, nervous, and shaken, and they reacted violently to a knock on the door. Accordingly, there was sufficient evidence to convict Womack without reliance on any hearsay testimony, and its admission, even if in error, was harmless. As a result, the trial court was well within its discretion to deny Womack's extraordinary motion for new trial on this basis. Accordingly, we affirm the trial court's order.

*Judgment affirmed. Dillard, P. J., and Hodges, J., concur*.