## S11A1386. MORGAN v. THE STATE.
### (725 SE2d 255)

NAHMIAS, Justice.
In August 1994, Appellant David Lee Morgan was convicted and sentenced for the 1993 felony murder of Valencia Wright.[1] After an extraordinary 17-year delay in resolving Appellant's motion for new

---

[1] The crimes occurred on February 2, 1993. In early 1994, Appellant was indicted in Fulton County for malice murder, and on August 9, 1994, Appellant was reindicted for malice murder, felony murder, and aggravated assault. On August 24, 1994, after a four-day trial, the jury acquitted Appellant of malice murder but convicted him of felony murder and aggravated assault. The aggravated assault verdict merged with the felony murder conviction, for which the trial court sentenced Appellant to life in prison. On August 31, 1994, Appellant filed a motion for new trial, which he amended with the assistance of new counsel on August 26, 2009, September 6, 2010, and November 15, 2010. On February 21, 2011, the trial court held a hearing, and on March 7, 2011, the motion was denied. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the September 2011 term and submitted for decision on the briefs.

trial, his appeal has finally reached this Court.[2] We affirm.

1. The evidence at trial, viewed in the light most favorable to the verdict, showed the following. On February 2, 1993, a police officer responding to a report of a stabbing saw Appellant walking very fast down the road in the officer's direction. Appellant was sweating and covered in blood. When the officer stopped his vehicle to assess the situation, Appellant blurted out, "I stabbed her and should be arrested." The officer placed Appellant in the patrol car and continued to the crime scene. Appellant continued talking about the stabbing on the way to and from the crime scene, describing the various places that he had stabbed the victim and explaining that he did it because she was leaving him to go back to her husband. Appellant said that he needed to go to jail for a long time.

At the crime scene, the officer found the victim on her hands and knees, covered in blood. There was blood all over the walls. The victim exclaimed, "David did it, look what he did to me," and she said to a neighbor, "why did David do this to me?" The victim had been stabbed at least ten times and died at the hospital.

Six months earlier, Appellant had attacked the victim, dragging her screaming from her apartment down a flight of stairs and trying to force her into a vehicle. When she escaped his grasp, Appellant pulled out a gun and shot her in the abdomen. Appellant later

---

[2] The briefs offer no explanation for the inordinate post-conviction delay. The record shows that the motion for new trial was filed within a week after the trial ended in August 1994. In November 1997, Appellant wrote to the clerk of the trial court requesting all documents filed in the case for purposes of appeal. In March 1998, the clerk wrote back and enclosed a printout of Appellant's case activity and a copy of the indictment and sentence, but the letter said that Appellant would have to pay a fee to obtain copies of his motions and seek any warrants from the arresting agency. The record then contains nothing for the six-and-a-half years between March 1998 and October 2004, when Appellant's trial counsel wrote a letter to Appellant in response to a letter Appellant had sent to the State Bar's Consumer Assistance Program. Trial counsel told Appellant that the trial court had relieved him from further representation and appointed new appellate counsel, but the record contains nothing showing a change of counsel. Indeed, trial counsel's letter also said, "I have not heard from you, or anyone else (family or lawyer), regarding this case since we left court following the trial," and it is clear from the trial transcript that, at the end of the trial, trial counsel had not been removed as Appellant's lawyer. In August 2007, at a status conference requested by the district attorney based on Appellant's numerous filings over the previous 18 months, the trial court said that it appeared that "somehow or other the ball got dropped as far as appointment [of appellate counsel] was concerned" and the case "dropped through the cracks." It took another year, however, for the court to appoint Appellant's new counsel. The case then slowly got back on track, although it still took more than two years to resolve the motion for new trial.

This sort of extraordinary post-conviction, pre-appeal delay "put[s] at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial." *Shank v. State*, 290 Ga. 844, 849 (725 SE2d 246) (2012). "[I]t is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay." Id. That duty unfortunately was not fulfilled in this case. That does not affect the outcome of this appeal, however, because Appellant has enumerated no error associated with the delay.

admitted to one of the victim's neighbors that he was the one who shot her, and he apologized in front of the victim's sister for shooting the victim when he visited her in the hospital.

At trial, Appellant called a psychotherapist who testified that his IQ of 63 was in the mentally deficient or mentally retarded range, that he fit the criteria for schizophrenia and depression, and that he was not on proper medication at the time of the killing and had experienced hallucinations on the night prior to the killing. The therapist offered his opinion that Appellant did not intend to kill the victim but instead acted out of rage.

When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of felony murder predicated on aggravated assault. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Appellant's only contention is that the trial court improperly curtailed the jury's consideration of a voluntary manslaughter conviction as a possible alternative to convicting him of felony murder, citing *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), and cases interpreting *Edge*. We disagree.[3]

Voluntary manslaughter is a lesser included offense of murder, and where there is a written request to charge on voluntary manslaughter and even slight evidence to support the charge, the trial court must give the jury the option of convicting the defendant of voluntary manslaughter instead of murder. See *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990). Appellant requested a pattern charge on voluntary manslaughter, which was at least slightly supported by the evidence. After charging the jury on the definitions of malice murder, felony murder, and aggravated assault, the court instructed:

However, if shown by the evidence that the killing was done by the defendant without malice and not in a spirit of revenge, but under a violent, sudden impulse of passion created in the mind of a person by the circumstances surrounding the transaction, you would be authorized to

---

[3] The District Attorney, but not the Attorney General, argues that Appellant waived this argument at trial. However, Appellant's counsel reserved his objections to the jury charge, as allowed for trials in 1994. See *Gaither v. State*, 234 Ga. 465, 466 (216 SE2d 324) (1975). Compare OCGA § 17-8-58 (effective for trials on or after July 1, 2007).

consider whether or not the defendant is guilty of voluntary manslaughter as I will define it.

The court then correctly and thoroughly charged the jury on voluntary manslaughter before stating:

If you believe beyond a reasonable doubt that the defendant committed the homicide alleged in this indictment and that it was done under a violent, sudden and irresistible passion, excluding any malice, then you would be authorized to find the defendant guilty of voluntary manslaughter.

Appellant does not allege any error in the jury instructions up to this point. Rather, Appellant takes issue with the next sentence of the jury charge:

If you do not believe beyond a reasonable doubt that the defendant is guilty of murder, felony murder or aggravated assault, but do believe beyond a reasonable doubt that the defendant is guilty of voluntary manslaughter, then you would be authorized to find the defendant guilty of voluntary manslaughter . . . .

Appellant reads this sentence as a direction on the temporal sequence the jury had to follow in reaching a verdict, that is, only after the jury decided that Appellant was not guilty of murder could it consider whether he committed voluntary manslaughter. Thus, Appellant contends that there was an *Edge* violation.

In *Edge v. State*, the jury found the defendant guilty of both felony murder and voluntary manslaughter for the death of a single victim, and the trial court entered judgment on both verdicts. See 261 Ga. at 865. This Court reversed the felony murder conviction, holding that "if there is but one assault and that assault could form the basis of either felony murder or voluntary manslaughter, a verdict of felony murder may *not* be returned if the jury finds that the assault is mitigated by provocation and passion." Id. at 866 (emphasis in original). The Court reasoned that "[t]o hold otherwise would eliminate voluntary manslaughter as a separate form of homicide since, in that event, every voluntary manslaughter would also be a felony murder." Id. To prevent this outcome, the Court adopted a modified merger rule that "precludes a felony murder conviction only where it would prevent an otherwise warranted verdict of voluntary manslaughter." Id. at 867.

The Court then announced in dicta, "Our holding requires some precision in the charge to the jury where the evidence would

authorize a conviction for felony murder or voluntary manslaughter." *Edge*, 261 Ga. at 867. The Court explained that "[a] sequential charge requiring the jury to consider voluntary manslaughter *only* if it has considered and found the defendant not guilty of malice murder and felony murder is not appropriate where there is evidence that would authorize a charge on voluntary manslaughter," because if the jury concluded that a felony murder had occurred, "it would not then go on to consider evidence of provocation or passion which might authorize a verdict for voluntary manslaughter." Id. (emphasis in original). Accordingly, the Court issued the following directive in footnote 3 of the opinion:

> In addition to the statutory definitions of the crimes involved, for example, murder, felony murder, and voluntary manslaughter, *the jury should be admonished that if it finds provocation and passion with respect to the act which caused the killing, it could not find felony murder, but would be authorized to find voluntary manslaughter*. Such instructions are necessary only when the aggravated assault is perpetrated against the homicide victim and is an integral part of the killing and when the evidence authorizes a voluntary manslaughter charge.

Id. at 867, n. 3 (emphasis added).

The Court initially adhered strictly to the directive in *Edge* footnote 3. See, e.g., *Russell v. State*, 265 Ga. 203, 204-205 (455 SE2d 34) (1995) (reversing felony murder conviction because the trial court did not give the footnote 3 admonition, even though the court correctly instructed the jury on the law of murder and voluntary manslaughter with no direction to reach a verdict on murder before considering voluntary manslaughter). However, in later cases the Court declined to follow *Edge*'s dicta, albeit without expressly disavowing it, while adhering to *Edge*'s holding that where the evidence would support a finding of either voluntary manslaughter or murder, "the trial court should instruct the jury so as to ensure adequate consideration of charges for both forms of homicide." *Edge*, 261 Ga. at 867. See, e.g., *Allen v. State*, 271 Ga. 502, 503 (521 SE2d 190) (1999) (finding no *Edge* violation even though the trial court did not give the admonition mandated by *Edge* footnote 3 and *Russell*); *Miner v. State*, 268 Ga. 67, 68 (485 SE2d 456) (1997) (same).

In *Hayes v. State*, 279 Ga. 642 (619 SE2d 628) (2005), we expressly recognized that, "[t]o the extent that *Russell* sets forth such a rule [requiring the footnote 3 charge], . . . it has been modified by more recent cases." Id. at 644. We reiterated that "[t]he intent of *Edge* was to prevent trial courts from authorizing juries to 'find

defendants guilty of felony murder *without consideration* of evidence of provocation or passion which might authorize a verdict of voluntary manslaughter.' " Id. (citation omitted; emphasis added). Accordingly, we no longer " ' "require the trial courts to follow an exact formula in instructing juries so long as the charge as a whole ensures that the jury will consider whether evidence of provocation and passion might authorize a verdict of voluntary manslaughter." ' " *Elvie v. State*, 289 Ga. 779, 781 (716 SE2d 170) (2011) (citations omitted).

In this case, the jury charge as a whole did not direct the jury to consider voluntary manslaughter only after it found Appellant not guilty of malice murder and felony murder, or otherwise preclude the jury from considering evidence of provocation and passion. The jury charge correctly defined malice murder, felony murder, aggravated assault, and voluntary manslaughter, including provocation and passion. Nothing in the charge suggested that the jury could not consider voluntary manslaughter until after it found Appellant not guilty of murder. Indeed, we have previously found no *Edge* violation where the trial court charged the jury in essentially the same language as the sentence Appellant finds objectionable. See *Hill v. State*, 269 Ga. 23, 25 (494 SE2d 661) (1998).

Appellant's reliance on *Harrison v. State*, 268 Ga. 574 (492 SE2d 218) (1997), is misplaced. In *Harrison*, the "trial court committed reversible error by informing 'the jury that they did not have to consider voluntary manslaughter if they found appellant guilty of malice murder or felony murder,' " thereby violating *Edge*'s holding. *Hayes*, 279 Ga. at 644 (quoting *Harrison*, 268 Ga. at 576). At no point in this case did the trial court inform the jury that it could dispense with considering whether Appellant was guilty of voluntary manslaughter.

In *Lewis v. State*, 283 Ga. 191 (657 SE2d 854) (2008), the trial court correctly charged the jury on murder and voluntary manslaughter, but in response to a jury note, the court told the jury: "In order to find voluntary manslaughter you must find all the elements of malice murder and felony murder do not exist." Id. at 193. We held that the recharge violated *Edge* by precluding the jury from considering voluntary manslaughter unless it first acquitted the defendant of both malice murder and felony murder. See id. Here, in response to a jury note, the trial court recharged the jury on the definitions of aggravated assault and voluntary manslaughter as the jury requested. Nothing in the recharge suggested that the jury was required to acquit Appellant of malice murder and felony murder before considering whether he committed voluntary manslaughter.

Moreover, when the jury initially returned a handwritten verdict sheet not showing a verdict on voluntary manslaughter, the trial

court instructed the jury on how to return such a verdict if it so desired. The court sent the jury back to deliberate, but it ultimately decided not to return a voluntary manslaughter verdict. In this case, there was no *Edge* violation.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 19, 2012.

*Thomas S. Robinson III*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Paige Reese Whitaker, Peggy R. Katz*, Assistant District Attorneys, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Amy H. Morelli*, Assistant Attorney General, for appellee.