**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 16, 2012**

# In the Court of Appeals of Georgia

A12A1537. SLOAN v. THE STATE.

BARNES, Presiding Judge.

In May 2000, a jury convicted Carl Levert Sloan of aggravated battery, aggravated assault, battery, three counts of cruelty to children, and four counts of false imprisonment, and the trial court sentenced him as a recidivist to 84 years in confinement. His trial counsel moved for a new trial in June 2000, but despite Sloan's repeated attempts to gain a ruling, the motion was not denied until more than a decade later, in May 2011. As our Supreme Court recently noted,

> We do not condone this inordinate delay in the motion for new trial proceedings. . . . These delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial. We therefore reiterate that it is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate

post-conviction motions are filed, litigated, and decided without unnecessary delay.

*Shank v. State*, 290 Ga. 844, 849 (5) (c) (725 SE2d 246) (2012).

On appeal, Sloan contends that the trial court erred in denying his motion for a mistrial after a child witness placed his character into evidence. Because the trial court gave appropriate curative instructions and did not abuse its discretion in denying the motion for mistrial, we affirm.

The evidence at trial showed that Sloan became angry at his girlfriend one night and woke her up, "fussing and cussing" at her for allegedly seeing another man. He removed his belt and beat her with it, slapped her face, and wrapped the belt tightly around her neck, choking her and threatening to kill her. Sloan finally allowed the victim to go to work, where she made an outcry. In addition to multiple bruises and scratches, the victim's index finger was broken in two places, and the next day, she went to an emergency room for examination and treatment. Due to the nature of the victim's injuries, several law enforcement officers came to the ER and talked to the victim, who would not name Sloan as her assailant because she feared "[h]e would go to jail and get out, and [she] didn't know what was going to happen after

that." The victim took out a warrant against Sloan the next day, obtained a temporary protective order, and changed her locks.

In the early hours of December 24, 1999, Sloan returned to the victim's residence and pushed his way in while holding a 22-ounce beer bottle. He grabbed the victim by her ponytail, dragged her into her bedroom, and began slapping her. During the assault, the victim's three children, who were ages four, eight, and nine as of the trial, came into the hallway, and Sloan ordered them to sit on the bed by their mother, who was crying. Sloan continued cursing at the victim, smashed the beer bottle on the television, and used the broken bottle to cut the victim's arm and leg. The children were "hollering and crying," and the four-year-old told Sloan to stop hitting his mother. Sloan told him to "shut the f*** up" and slapped him. When the victim's daughter told Sloan to stop hitting her mother, he replied, "Your mama is a mother-f***ing whore" and began to spit on the mother. The mother quietly encouraged her daughter to leave the house and get help from her great-grandmother, who lived across the street. The great-grandmother called 911, but Sloan left the house before the police arrived.

The victim's eight-year-old child also testified about the assault. On cross-examination, the child denied talking to the prosecutor before trial but admitted on

3

re-direct that he had talked to her briefly. The prosecutor asked the child what she had asked him to do before the trial began, and the child responded that the prosecutor told him to tell the truth.

The victim's nine-year-old daughter trial, testified that Sloan told the children to come into their mother's room so they could watch him kill her and then tell their future children about it. She confirmed that Sloan, whose nickname was "Pig," hit her brother and cut her mother with a broken bottle. As with the prior child witness, on cross-examination Sloan asked the child about previous conversations with the prosecutor. On re-direct, the prosecutor asked, "What did I ask you to do for your testimony?" The child responded, "Never – never talk about Pig in jail."

Sloan objected and moved for a mistrial, arguing that the child had improperly introduced evidence of Sloan's character. The prosecutor explained that she had anticipated the child would answer that she had been asked to tell the truth, as her brother just had, and that she had attempted to talk over the child's response when she realized what the child was saying. The prosecutor argued that a mistrial was unnecessary and that a curative instruction that did not repeat what the child said would be sufficient. The trial court had not heard the child's response, and after listening to a recording of the testimony several times, the court ruled that it could not

4

determine whether the jury had heard the child without polling them, which would just reinforce the improper testimony. Considering the context of the quiet answer, the court denied the motion and instructed the jury that if anyone had heard the last response from the last witness, they were to disregard it entirely and not consider it as evidence.

Sloan does not dispute the fact that the evidence was sufficient to support the guilty verdicts. His sole claim on appeal is that the trial court committed reversible error by denying his motion for mistrial. "When prejudicial matter is placed before the jury in a criminal case, the trial judge must decide whether a mistrial must be granted as the only corrective measure or whether the prejudicial effect can be corrected by withdrawing the testimony from the consideration of the jury under proper instructions." *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315) (1982). The decision "is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." *Ottis v. State*, 271 Ga. 200, 201 (3) (517 SE2d 525) (1999). Here, the trial court acted immediately, ruled out the offensive testimony, and properly instructed the jury not to consider it in its deliberations.

Under the facts of this case, we cannot say that this amounted to an abuse of discretion.

*Judgment affirmed. Adams and McFadden, JJ., concur.*