In the Supreme Court of Georgia


Decided:   July 5, 2016


S16A0208.  RHODES v. THE STATE.


THOMPSON, Chief Justice.

Appellant Dag Luquinciette Rhodes was convicted of malice murder, felony murder, armed robbery, and possession of a firearm during the commission of a crime, along with other related offenses, in connection with the shooting deaths of Frederick and Yong-Suk Walker.[1]  Appellant appeals from

[1] The crimes occurred between February 2, 1998, at 10:00 p.m. and February 3, 1998, at 4:59 p.m.  A Columbia County grand jury returned an indictment charging appellant and his co-defendants Jimmie Lee Rhodes and David Easterling with malice murder (two counts), felony murder (two counts), armed robbery (two counts), burglary, possession of a firearm during the commission of crimes (two counts), and possession of a firearm by a convicted felon.  On July 10, 2000, the State filed a notice of intention to seek imposition of the death penalty against appellant and he was tried separately before a jury from February 23-26, 2004.  On February 26, 2004, appellant was found guilty of all charges.  Following the jury's determination not to impose the death penalty, the trial court sentenced appellant on March 8, 2004, to two consecutive life sentences without the possibility of parole for the malice murder of the victims, twenty years concurrent for each armed robbery count, twenty years concurrent for the burglary count, five years consecutive for each count of possession of a firearm during the commission of a felony, and five years concurrent for the possession of a firearm by a convicted felon.  The felony murder counts thereafter were vacated by operation of law.  See Hulett v. State, 296 Ga. 49, 53 (2) (766 SE2d 1) (2014).  Appellant filed a motion for new trial on April 1, 2004, which he amended on October 29, 2009.  Following a hearing, the trial court entered an order on December 3, 2012 denying the motion for new trial.  Appellant filed a notice of appeal on December 11, 2012 and the appeal was docketed in this Court for the January 2016 term and submitted for a decision on the briefs.

the denial of his motion for new trial asserting that the trial court erred in failing to find that the State withheld exculpatory evidence from the defense in violation of Brady v. Maryland, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963) and Giglio v. United States, 405 U.S. 150 (92 SCt 763, 31 LE2d 104) (1972). Finding no error, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence shows that the police conducted a welfare check and discovered the victims' bodies at their home in Evans, Georgia on February 3, 1998, after the couple failed to open their liquor store and check cashing business. The night before the bodies were discovered, appellant and his co-defendants Jimmie Lee Rhodes ("Jimmie Lee") and David Easterling ("Easterling") drove to an area near the victims' house. While Easterling waited in the car, appellant and Jimmie Lee broke into the victims' house and demanded money from the couple, who were in bed. After shooting Mrs. Walker, the men were able to obtain money from Mr. Walker before shooting him, too. Thereafter, appellant and Jimmie Lee left the house with the money and were picked up by Easterling. In June 2000, appellant, Jimmie Lee and Easterling were jointly indicted by a Columbia County grand jury and charged with multiple crimes related to the incident.

2

Shortly thereafter, the State filed notices of intent to seek the death penalty against all three men.

Prior to appellant's trial, Jimmie Lee was tried and convicted on all counts and was sentenced to two life sentences without parole, while Easterling entered guilty pleas to two counts of murder and received two life sentences.[2] Easterling, having already been sentenced pursuant to his guilty pleas, testified for the State at appellant's trial claiming, among other things, that after the murders appellant told him that "it got ugly" and "they [appellant and Jimmie Lee] had to wet [the victims]."[3] Also testifying for the State was Russell Sharpe ("Sharpe"), a prison inmate who met appellant when both men were assigned to work in the prison barbershop during appellant's pre-trial incarceration.

Sharpe testified that appellant approached him seeking legal information and help with this case. After appellant provided him with details about the murders, however, Sharpe sent a letter to the Columbia County District Attorney's office seeking a deal for himself. According to Sharpe's testimony,

---

[2] Easterling additionally pled guilty to another unrelated murder for which he received a third life sentence.

[3] According to Easterling's trial testimony, "to wet" is street slang for "to shoot."

3

appellant told him that the motive for the crimes was to get money to repay a drug debt; that appellant and Jimmie Lee cased the victims' house prior to the crimes; that Mrs. Walker was shot first by appellant, while her husband was shot shortly thereafter by Jimmie Lee; that Easterling picked them up after they left the crime scene; and that, although Jimmie Lee wanted to kill Easterling, too, appellant talked him out of it. Although admitting that prior to meeting appellant he had been imprisoned in a cell next to Jimmie Lee at a different prison, Sharpe denied learning details about the crimes from anyone other than appellant.

We conclude the evidence in this case was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends that the State failed to disclose to the defense evidence of deals made between the State and its two key witnesses, Easterling and Sharpe, in exchange for their testimony. Although acknowledging that evidence of the State's deals with these witnesses was revealed at trial by the witnesses, themselves, appellant complains that the terms and extent of the

State's deal making was not disclosed to appellant and asserts that this failure constituted a violation of his due process rights under Brady, 373 U.S. at 87 and Giglio, 405 U.S. at 150.

It is well-settled that the State "has a duty to reveal to the defense any agreement with a witness concerning criminal charges pending against that witness, and the failure to disclose such an agreement constitutes a violation of the accused's due process rights under Brady." Brannon v. State, 298 Ga. 601, 605 (783 SE2d 642) (2016). See Giglio, 405 U.S. at 154; Younger v. State, 288 Ga. 195, 200 (702 SE2d 183) (2010). Here, however, neither Easterling nor Sharpe had charges pending against them at the time they provided testimony at appellant's trial. Moreover, the terms of both witnesses' prior plea agreements with the State were contained in public records and readily available to appellant prior to his trial. Although appellant asserts there may have been informal deals between the State and these witnesses which were unknown to him and not presented at trial, appellant has failed to prove the existence of any such deals and mere speculation that informal deals existed is insufficient to substantiate appellant's claim that the State withheld exculpatory evidence

which prejudiced his defense.[4]  See Brannon, 298 Ga. at 605.

Further, in order to establish reversible error based on the prosecution's failure to disclose such an agreement between the State and a testifying witness, a defendant must show that a reasonable probability exists that the result of his trial would have been different had evidence of the agreement been disclosed. See Brannon, 298 Ga. at 605.  In this case, the record shows that the credibility, biases, and motivations of both Easterling and Sharpe were attacked at length by appellant's trial counsel on cross-examination and in closing argument. Appellant's counsel elicited multiple admissions from Easterling during cross-examination, including that he pled guilty to the murders in this case to avoid the death penalty and pled guilty to murder in a different case only after falsely implicating another man.  With respect to Sharpe, trial counsel extracted admissions from the witness that he was in prison for voluntary manslaughter after having his murder charge reduced in exchange for assisting in the

---

[4] Although Easterling's attorney testified at the motion for new trial hearing that he believed deals were made outside his presence, he admitted he was never clear on exactly what was said to his client or even whether an inducement to plea of which he was unaware was even made. Easterling's attorney agreed, however, that Easterling had already received all the consideration offered him at the time he took the stand and testified at appellant's trial.  With respect to Sharpe, the record clearly shows appellant had knowledge that Sharpe intended to testify against him in order to procure the District Attorney's help in obtaining favorable treatment from the parole board.

prosecution of another man, that he communicated with the prosecution in this case, and that he expected the District Attorney to write a letter on his behalf to the parole board. Based on this evidence, appellant's trial counsel argued to the jury in closing that Easterling's testimony was motivated by his desire to avoid the death penalty and receive favorable treatment during his tenure in a correctional facility, while Sharpe's primary motivation was to obtain favorable treatment and his release from prison.

Under the circumstances, we find appellant has failed to show agreements existed between the State and Easterling or Sharpe concerning pending charges against them of which the defense was unaware, and conclude, in any event, that appellant cannot show a reasonable probability exists that the result of his trial would have been different had any additional impeachment evidence of this kind regarding these witnesses been disclosed to him.

Judgment affirmed. All the Justices concur.