303 Ga. 254
FINAL COPY

S17A1905. OWENS v. THE STATE.

NAHMIAS, Justice.

Appellant Margie Owens was found guilty of voluntary manslaughter as a lesser offense of malice murder, felony murder based on aggravated assault, and possession of a firearm during the commission of a crime, all in connection with the shooting death of her husband, Randall Owens. In June 1998, the trial court sentenced Appellant to serve life in prison for felony murder and a consecutive term of five years on the firearm count; the court merged the voluntary manslaughter verdict into the felony murder conviction. It then took 19 years for her motion for new trial to be decided and her notice of appeal and the record in the case transmitted to this Court.[1]

---

[1] The victim was killed on May 17, 1997. On November 7, 1997, a Walker County grand jury indicted Appellant for malice murder, felony murder, and possession of a firearm during the commission of a crime. At a trial from June 1-5, 1998, the jury found Appellant guilty of voluntary manslaughter as a lesser offense of malice murder, felony murder, and the firearm charge. The trial court sentenced Appellant the following week. On June 24, 1998, Appellant filed a motion for new trial. After eight years of delay in preparing the trial transcript and shuffling of Appellant's appellate counsel, on July 14, 2006, Appellant amended her motion through new counsel. On July 21, 2006,

In this appeal, Appellant contends that her trial counsel provided ineffective assistance and that her conviction and sentence for felony murder instead of voluntary manslaughter violate the modified merger rule that this Court adopted in Edge v. State, 261 Ga. 865 (414 SE2d 463) (1992). As explained below, Appellant failed to show ineffective assistance of counsel, but she is correct that her conviction and sentence for felony murder violate the modified merger rule. Accordingly, we affirm Appellant's conviction and sentence on the firearm count, we vacate her conviction and sentence for felony murder, and we remand the case to the trial court with direction to enter — promptly — a conviction and sentence for voluntary manslaughter.

But we do more. This Court and the Court of Appeals have for several years now repeatedly admonished criminal defense lawyers, prosecutors, and trial court judges to address and prevent inordinate and unjustified post-trial,

the trial court held an evidentiary hearing, and on August 11, 2006, the court entered an order, which was signed on August 8, summarily denying Appellant's motion. On August 16, Appellant filed a timely notice of appeal. Thereafter, on September 25, 2006, the trial court entered an Amended Order "nunc pro tunc, August 8, 2006," again denying Appellant's new trial motion but adding a specific finding that she "receive[d] effective assistance of counsel." After more than another decade of delay, the trial court clerk finally transmitted the record to this Court with a certification dated June 1, 2017, that states: "The Clerk notes a delay in the transmitting of the record to the Supreme Court. Appeal was filed in 2006, current clerk took office in 2009 and only recently became aware of the appeal." The case was docketed in this Court for the August 2017 term and submitted for decision on the briefs.

2

pre-appeal delays of the sort this case exemplifies. Accordingly, in Division 4 below, we direct further action to address this continuing problem in our criminal justice system.

1. Viewed in the light most favorable to the verdicts, the evidence presented at Appellant's trial showed the following. On April 21, 1997, less than a month before the shooting, Appellant's sister and her adult daughter obtained a probate court order involuntarily committing Appellant to a mental hospital due to their concerns about her excessive use of alcohol, violent behavior, and threats to kill her husband Randall. Appellant was released several days later.

On May 17, 1997, Appellant's daughter and niece and the niece's husband went to Appellant and Randall's trailer for a cookout. Appellant had been drinking heavily that day and began arguing with Randall, repeatedly threatening to kill him. At one point, Appellant accused Randall of having an affair with her daughter (his stepdaughter) and crudely suggested that her daughter perform oral sex on him. Appellant told her daughter that "she was going to get their gun and shoot" Randall and also threatened to kill the daughter. Eventually Randall told Appellant that he was tired of listening to her,

3

and he went inside to lie down in their bedroom. Appellant later went inside to the bedroom and began arguing with Randall again. The three guests tried to leave at that point, and Appellant tried to prevent them from leaving by pulling wires out of her daughter's car, which the niece and her husband then helped the daughter fix. The three of them then left.

Later that evening, Appellant went to her brother-in-law's neighboring residence and asked to use his phone to call 911. He agreed, and Appellant called 911 at approximately 11:30 p.m. and reported that she "may have shot her husband." Appellant left a gun with her brother-in-law and proceeded to go to another neighbor's residence and ask for a beer. Appellant soon heard sirens and told the neighbor that they were coming for her because she had shot her husband.

The responding officers found Randall in the couple's home lying face down on the floor between the kitchen and the living room, with a trail of blood leading back to the bedroom. There was also a bloodstain on the bed. As the officers interviewed neighbors who had gathered outside, Appellant walked up. She was intoxicated, upset, and belligerent. Appellant, who had no visible signs of injury, said that she had been in an argument with her husband and believed

4

that she had shot him. An officer retrieved the gun that Appellant left at her brother-in-law's home. There were no signs of a struggle inside the home, and the physical evidence indicated that Randall had been lying in bed smoking a cigarette and tried to roll away from Appellant to avoid being shot. An autopsy showed that he died from blood loss due to a gunshot wound in his back.

Appellant testified at trial, claiming that on the day of the shooting, beginning around 10:30 a.m., Randall cursed at her about the breakfast she had cooked; shoved her; followed her around the home cursing at her as she tried to clean up; slapped her and put a gun to her head, saying, "Bit*h, I'll blow your godda*n brains out"; threatened that he would "beat [her] brains out" if she left the home; and cut her arm with a box cutter. Appellant said that they then had a cookout, and after those guests left, she went into the bedroom and asked Randall to extinguish the charcoal on the grill. According to Appellant, he got on top of her and started slapping and choking her, so she grabbed for something to hit him with to knock him off her and heard a gun fire. Appellant said that she did not know at the time that she had shot him. Appellant also recounted a long history of domestic violence by Randall, and the defense called an expert witness who testified about battered person syndrome.

5

The trial court instructed the jury on the three charges in the indictment and, at Appellant's request, on voluntary manslaughter as a lesser offense of both malice murder and felony murder and on self-defense, including justification based on battered person syndrome. The jury then found Appellant guilty of voluntary manslaughter, felony murder, and possession of a firearm during the commission of a crime.

2. Appellant contends — and the State concedes — that in light of the jury's finding that she was guilty of voluntary manslaughter, the trial court should have vacated the jury's guilty verdict on the felony murder charge. The parties are correct. In Edge, 261 Ga. 865, this Court held that "where the jury renders a verdict for voluntary manslaughter, it cannot also find felony murder based on the same underlying aggravated assault." Id. See also Sanders v. State, 281 Ga. 36, 37 (635 SE2d 772) (2006) (explaining that the modified merger rule adopted in Edge applies "if the underlying felony is directed against the homicide victim and is not independent, but rather is an integral part, of the killing"); Sinkfield v. State, 262 Ga. 555, 556 (422 SE2d 851) (1992) (reversing a felony murder conviction because the trial court improperly merged a voluntary manslaughter verdict into it). Accordingly, we vacate Appellant's

6

conviction and sentence for felony murder and remand this case to the trial court to promptly resentence her for voluntary manslaughter instead of felony murder.

3. Appellant's only other contention is that her trial counsel provided ineffective assistance. To prevail on this claim, Appellant must prove both that her counsel's performance was professionally deficient and that this deficiency resulted in prejudice to her case. See Strickland v. Washington, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Appellant must show that her counsel's acts or omissions were objectively unreasonable, considering all of the circumstances at the time and in the light of prevailing professional norms. See id. at 687-690. In particular, "decisions as to what witnesses and other evidence to present are matters of trial strategy and are ineffective only if unreasonable [decisions] that no competent attorney would make." Walker v. State, 301 Ga. 482, 491 (801 SE2d 804) (2017). To establish prejudice, Appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694. "In all, the burden of proving a denial of effective assistance of counsel is a heavy one." Wells v.

7

State, 295 Ga. 161, 164 (758 SE2d 598) (2014). Appellant has failed to carry that burden.

Appellant asserts that her trial counsel was ineffective in failing to call four witnesses to testify about her husband's violence toward her over the years and in failing to offer into evidence photographs from Appellant's hospital visits showing the injuries Randall caused when he beat her. She contends that these witnesses and pictures would have proved her defense of justification based on battered person syndrome. At the motion for new trial hearing, trial counsel explained that she made a tactical decision at trial not to call the four witnesses and present the pictures, given the other evidence that the defense presented.

In support of the self-defense claim at trial, Appellant's counsel elicited testimony from several witnesses detailing Randall's abuse of Appellant. For example, Appellant's daughter testified that on occasions prior to the shooting, Randall hit Appellant, knocked her teeth out, shoved her, and pulled her down a hallway by her hair. Appellant's sister testified that she had seen Randall verbally abuse Appellant and punch her in the face. Appellant's niece testified that Randall had "back-handed [Appellant] and busted her mouth." And Appellant testified that Randall began abusing her after they had been married

8

for six months, and after that he hit and choked her on multiple occasions, knocked out her teeth, shot at her, and threatened to kill her. In addition, counsel presented extensive expert testimony that Appellant suffered from battered person syndrome.

Thus, trial counsel presented ample evidence in support of Appellant's defense of justification based on battered person syndrome; counsel's strategic decision not to call additional witnesses and submit pictures of injuries was not unreasonable; and she therefore did not perform deficiently. See Walker, 301 Ga. at 491. Moreover, the four witnesses Appellant references were not called to testify at the motion for new trial hearing, and no hospital pictures were put into the record. We therefore cannot assess the probative value of the cumulative evidence that Appellant asserts should have been presented at trial, and we cannot say that such evidence in reasonable probability would have resulted in a more favorable outcome for Appellant. See id. See also Howard v. State, 298 Ga. 396, 399 (782 SE2d 255) (2016) ("Mere speculation about what the evidence would have shown had it actually been obtained does not satisfy the requirement of showing [Strickland] prejudice."). Appellant failed to prove either prong of the ineffective assistance of counsel test, and the trial

court therefore correctly denied her claim.

4.  In this State, a defendant convicted after trial has the right to a direct appeal and the right to counsel for that appeal — appointed counsel if the defendant is indigent, as so many are. See Trauth v. State, 295 Ga. 874, 875-876 (763 SE2d 854) (2014). As described in footnote 1 above, this case endured extensive and largely unexplained delays between Appellant's sentencing in June 1998 and her appeal arriving at this Court 19 years later, in July 2017. Appellant has enumerated no error arising from the delay, and it therefore does not affect the outcome of this appeal. See Morgan v. State, 290 Ga. 788, 789 n.2 (725 SE2d 255) (2012). We note, however, that the maximum sentence for voluntary manslaughter is 20 years in prison, see OCGA § 16-5-2 (b), and there is no mandatory minimum prison sentence, so even with the consecutive five year sentence Appellant received on the firearm count, on remand the trial court would be entitled to impose a sentence many years shorter than the time she has already spent in prison. Indeed, had the parties identified and agreed on the court's obvious sentencing error not on appeal but at the motion for new trial stage, the court might well have corrected the error then, rather than having to do so more than 11 years later.

10

In March 2012, this Court decided an appeal that reached us more than 15 years after the defendant was convicted and sentenced. In <u>Shank v. State</u>, 290 Ga. 844 (725 SE2d 246) (2012), we said that "[w]e do not condone this inordinate delay in the motion for new trial proceeding," we noted that "[t]his Court is unfortunately seeing such extraordinary post-conviction, pre-appeal delays with greater frequency," and we therefore issued the following admonition:

> These delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial. We therefore reiterate that it is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay.

Id. at 849. We recognize that all of these participants in the system sometimes have incentives, whether tactical or simply the press of other business, that weigh against working to alleviate delays in post-conviction litigation — but there are rarely good explanations for long delays. And even if long-delayed appeals rarely result in outright reversals of convictions or only retrials or resentencings, these extended and unjustified delays in resolving criminal cases make our State's criminal justice system appear unfair and grossly inefficient.

11

Over the past six years, this Court has repeated our <u>Shank</u> admonishment in many more cases involving similarly unjustified delays.[2] During this period, the Court of Appeals has issued many similar rebukes.[3] And there are many more cases in which a similar admonition would have been appropriate.[4] There

---

[2]  See, e.g., <u>Calloway v. State</u>, 303 Ga. 48 (810 SE2d 105) (2018) (nearly 13-year delay); <u>Veal v. State</u>, 301 Ga. 161, 161 n.1 (800 SE2d 325) (2017) (18-year delay); <u>Walker v. State</u>, 293 Ga. 709, 710 n.2 (749 SE2d 663) (2013) (nearly 9-year delay), overruled on other grounds by <u>State v. Springer</u>, 297 Ga. 376 (774 SE2d 106) (2015); <u>Brockman v. State</u>, 292 Ga. 707, 708 n.1 (739 SE2d 332) (2013) (18-year delay); <u>Arnold v. State</u>, 292 Ga. 268, 272 n.5 (737 SE2d 98) (2013) (12-year delay); <u>Johnson v. State</u>, 292 Ga. 22, 22 n.2 (733 SE2d 736) (2012) (more than 10-year delay); <u>Simmons v. State</u>, 291 Ga. 664, 668 (732 SE2d 65) (2012) (21-year delay); <u>Brinkley v. State</u>, 291 Ga. 195, 195-196 (728 SE2d 598) (2012) (nearly 10-year delay), disapproved on other grounds by <u>Veal v. State</u>, 298 Ga. 691 (784 SE2d 403) (2016); <u>Morgan</u>, 290 Ga. at 789 n.2 (nearly 17-year delay).

[3]  See, e.g., <u>Surry v. State</u>, 340 Ga. App. 8, 9 n.2 (795 SE2d 336) (2016) (nearly 6-year delay); <u>Jackson v. State</u>, 339 Ga. App. 313, 314 n.2 (793 SE2d 201) (2016) (nearly 9-year delay); <u>Hill-Blount v. State</u>, 336 Ga. App. 633, 634 (785 SE2d 309) (2016) (nearly 8-year delay); <u>Robinson v. State</u>, 334 Ga. App. 646, 647 (780 SE2d 86) (2015) (16-year delay); <u>Carter v. State</u>, 331 Ga. App. 212, 213 (770 SE2d 295) (2015) (over 11-year delay); <u>Waye v. State</u>, 326 Ga. App. 202, 202-203 (756 SE2d 287) (2014) (nearly 6-year delay); <u>Sloan v. State</u>, 318 Ga. App. 51, 51-52 (733 SE2d 357) (2012) (nearly 12-year delay). See also <u>Jayko v. State</u>, 335 Ga. App. 684, 686 n.2 (782 SE2d 788) (2016) (criticizing the defense lawyer responsible for the 10-year delay in transmitting the record relating to his client's 10-year probation sentence, resulting in the appeal being dismissed as moot).

[4]  See, e.g., <u>De La Cruz v. State</u>, 303 Ga. 24, 24 n. 1 (810 SE2d 84) (2018) (nearly 21-year delay); <u>White v. State</u>, 302 Ga. 806, 806 n.1 (809 SE2d 749) (2018) (13-year delay); <u>Jackson v. State</u>, 301 Ga. 878, 878 n.1 (804 SE2d 357) (2017) (nearly 7-year delay); <u>McCray v. State</u>, 301 Ga. 241, 241 n.1 (799 SE2d 206) (2017) (10-year delay); <u>Barnett v. State</u>, 300 Ga. 551, 551 n.1 (796 SE2d 653) (2017) (12-year delay); <u>Philpot v. State</u>, 300 Ga. 154, 154 n. 1 (794 SE2d 140) (2016) (9-year delay); <u>Williams v. State</u>, 300 Ga. 218, 218 n.1 (794 SE2d 157) (2016) (nearly 12-year delay); <u>Sheard v. State</u>, 300 Ga. 117, 117 n.1 (793 SE2d 386) (2016) (17-year delay); <u>Cooks v. State</u>, 299 Ga. 787, 787 n.1 (792 SE2d 389) (2016) (9-year delay); <u>Foster v. State</u>, 299 Ga. 691, 691 n.1 (791 SE2d 826) (2016) (13-year delay); <u>Rhodes v. State</u>, 299 Ga. 367, 367 n.1 (788 SE2d 359) (2016) (over 11-year delay); <u>Scudder v. State</u>, 298 Ga. 438, 438 n.1 (782 SE2d 638) (2016) (nearly 9-year delay); <u>Churchill v. State</u>, 298 Ga. 471, 471 n.1 (782 SE2d 5) (2016) (over 12-year delay); <u>McDuffie v. State</u>, 298 Ga. 112, 112 n.2 (779 SE2d 620) (2015) (9-year delay); <u>Crawford v. State</u>,

12

are signs that this message is getting through to some people: the occasional explanation or apology in a trial court order deciding a long-pending motion for new trial or in an appellate brief or oral argument, and isolated reports of public defender's offices, district attorney's offices, and trial courts taking measures to identify and advance much-delayed matters so appeals can be decided. But it is clear that there remain far too many participants in our criminal justice system who are not paying sufficient attention to this problem.

So this Court now moves from request to direction. No later than September 17, 2018, the Council of Superior Court Judges of Georgia shall submit to this Court for approval a proposed Uniform Rule of Superior Court designed to address this problem. The Council shall develop the proposed rule in consultation with the State Bar of Georgia, the Georgia Public Defender Council, the Georgia Association of Criminal Defense Lawyers, the Prosecuting Attorneys' Council of Georgia, the Council of Superior Court Clerks of

---

297 Ga. 680, 680 n.1 (777 SE2d 463) (2015) (12-year delay); Twitty v. State, 298 Ga. 204, 204 n.1 (779 SE2d 298) (2015) (nearly 7-year delay); Ponder v. State, 297 Ga. 653, 654 n.1 (777 SE2d 249) (2015) (nearly 8-year delay); White v. State, 297 Ga. 218, 218 n.1 (773 SE2d 219) (2015) (7-year delay); Cooper v. State, 296 Ga. 728, 728 n.1 (770 SE2d 597) (2015) (7-year delay); Sales v. State, 296 Ga. 538, 538 n.1 (769 SE2d 374) (2015) (over 8-year delay); Walker v. State, 296 Ga. 161, 161 n.1 (766 SE2d 28) (2014) (over 7-year delay); Prince v. State, 295 Ga. 788, 789 n.1 (764 SE2d 362) (2014) (nearly 10-year delay); Woodall v. State, 294 Ga. 624, 625 n.1 (754 SE2d 335) (2014) (nearly 8-year delay).

13

Georgia, and other interested organizations. To ensure that all Georgia superior court judges, superior court clerks, prosecutors, and lawyers who defend criminal cases understand this Court's concern about this problem, the Court will also deliver a copy of this opinion to the Council of Superior Court Judges, the Georgia Public Defender Council, the Georgia Association of Criminal Defense Lawyers, the Prosecuting Attorneys' Council, and the Council of Superior Court Clerks, with the expectation that they will promptly provide a copy to each of their members.

Some delay is inherent in any legal system, particularly one as busy as Georgia's. But we must all work to prevent delays, particularly in the most serious of our criminal cases, that cannot be explained or justified to the parties in those cases, the victims of crimes, and the public we serve.

Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.

Decided March 5, 2018.

Murder. Walker Superior Court. Before Judge Van Pelt.

Jennifer E. Hildebrand, for appellant.

Herbert E. Franklin, Jr., District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General, for appellee.