**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: February 3, 2026

S26A0073.  RILEY v. THE STATE.

WARREN, Presiding Justice.

In August 2023, Zajaliq Riley was convicted of felony murder and possession of a firearm during the commission of a felony related to the shooting death of Devion Miley.  He appeals his convictions, arguing that the State violated due process by failing to disclose an agreement to give Detric Bush—Riley's co-indictee who testified for the State at Riley's trial in Muscogee County—leniency in an unrelated case in Troup County based on his testimony against Riley.  See *Brady v. Maryland,* 373 US 83 (1963); *Giglio v. United States,* 405 US 150 (1972).  Riley also contends that his trial counsel provided ineffective assistance by failing to cross-examine Bush about the Troup County case.  Because the evidence presented at the motion for new trial hearing demonstrated that there was no

agreement regarding Bush's Troup County case before Riley's trial and because Riley has failed to show that he was prejudiced by his counsel's allegedly deficient performance, we affirm.[1]

1. Miley was killed by a gunshot wound on the night of May 8, 2021. Riley and Bush were arrested and charged with felony murder and related crimes based on the allegation that they killed Miley during an attempted marijuana sale.

(a) *Trial*

At Riley's trial, the State called Bush as a witness, and he gave the following testimony. Bush knew Riley and Miley from school.

---

[1] Miley was killed in May 2021. In March 2023, a Muscogee County grand jury indicted Riley and Bush for felony murder, felony attempt to purchase marijuana, and possession of a firearm during the commission of a felony. Bush was also indicted for possession of firearm by a first offender probationer. In exchange for Bush's agreement to testify against Riley, the State nolle prossed the felony murder count against Bush, and Bush pled guilty to the remaining counts. At a jury trial in August 2023, the jury found Riley guilty on all counts. Riley was sentenced to serve life in prison without the possibility of parole for felony murder and a consecutive five years in prison for the firearm count. The trial court merged the remaining count. Riley timely filed a motion for new trial in September 2023 and amended it with new counsel in December 2024. After an evidentiary hearing in February 2025, the court denied Riley's motion in June 2025. Riley filed a timely notice of appeal. The appeal was docketed to this Court's term beginning in December 2025 and submitted for a decision on the briefs.

On the night of May 8, Bush and Riley, who were each carrying a firearm, drove to the motel where Miley lived to buy some marijuana from him. They had trouble completing the marijuana transaction because Bush and Riley were trying to use an online service to pay Miley and they could not establish an internet connection. They decided to drive to a nearby fast food restaurant to use the restaurant's Wi-Fi. Riley was driving, Bush was in the passenger's seat, and Miley was in the back seat behind Bush. After driving a short distance from the motel, Riley "stopped the car and told [Miley] to get out." Miley "tried to get out of the car and [Riley] shot him." When Riley fired the shot, Riley was still sitting in the car, and Miley was "in the process of opening the door and stepping out of the car." Riley and Bush then drove away.

Later, someone driving by saw Miley injured and "sitting on the curb." The driver called 911, and Miley was taken to the hospital, where life-saving measures were attempted but unsuccessful. The medical examiner testified that Miley's cause of death was a gunshot wound to the torso.

3

On cross-examination, Bush acknowledged that he had been indicted for felony murder and other crimes related to Miley's death, that he had been in prison for approximately two years leading up to the trial, and that he had been given a deal by the State in exchange for his testimony. He explained that he would be sentenced after Riley's trial and that, under the terms of the deal, the State agreed to dismiss his murder charge and to recommend that he be sentenced to 15 years, with 5 in prison and 10 on probation, for his guilty plea to the remaining charges of criminal attempt to commit a felony and possession of a firearm during the commission of a felony and by a first offender probationer. Bush also admitted that he had been involved with Riley in other criminal acts before Miley's shooting and testified that Riley twice "got out of trouble by telling on [Bush]"; the first incident involved a stolen car and the second involved an armed robbery. After the second incident, Bush was "staying away from [Riley]," and the night of May 8 was the "first time" they "went somewhere together" since the armed robbery.

Riley testified in his own defense, offering the following account. On the night of May 8, he went with Bush to buy marijuana from Miley. At the motel, Miley got in the car with them, and Riley drove away. Riley, however, did not shoot Miley and instead simply let him out of the car soon after they left the motel. With respect to earlier, unrelated incidents, Riley "did tell on" Bush regarding an armed robbery for which he and Bush were arrested, and after Riley gave his statement to law enforcement, Bush entered a first-offender plea. Bush knew that Riley "had told on him," and at the time of the shooting, Riley and Bush "didn't have a personal connection due to [Riley] telling on [Bush]."

In closing argument, Riley's attorney emphasized that Bush's testimony was the "linchpin" of the State's case and that Bush had a motive to lie because he was being prosecuted for murder. The attorney argued that the State "paid Mr. Bush for his testimony" by dismissing the murder count and recommending a short sentence for the remaining counts, pointing out that in light of the time Bush had already served in prison, he could be "out of prison in a matter

5

of months." The attorney opined that all Bush had to do to get this deal from the State was testify against Riley, the person "that told the police on [him]."

As part of the final jury charge, the jury was instructed that it was to determine the credibility of witnesses and that

> in assessing the credibility of a witness, you may consider any possible motive in testifying, if shown. In that regard, you are authorized to consider any possible pending prosecutions, negotiated pleas, grants of immunity or leniency, or similar matters.

The jury found Riley guilty of felony murder and the related crimes for killing Miley.

(b) *Motion for New Trial*

In his motion for new trial, Riley raised both claims he raises on appeal—that under *Brady* and *Giglio*, the State violated due process by failing to disclose evidence of an agreement to give leniency to Bush in the Troup County case and that Riley's trial counsel was ineffective for failing to question Bush about the Troup County case.

At the hearing on the motion for new trial, Riley submitted into

evidence the transcript from the criminal proceeding in Troup County in January 2024 in which Bush pled guilty to two violations of the Street Gang Terrorism and Prevention Act, possession of a firearm by a first offender probationer, and fleeing a police officer based on an incident that happened on July 22, 2021. The maximum sentence Bush faced for these crimes was a combined 55 years in prison. The State recommended a sentence of 30 years, with the first 2 served in prison and the remainder on probation. The State further recommended that the 2 years be commuted to time served and that Bush's probation be eligible for early termination at 15 years if he complied with its terms. The State explained that this sentencing recommendation was made "after receiving a request essentially" from the District Attorney's office in Muscogee County to give Bush "a chance to avoid going to prison because of the people he cooperated against." The Troup County court accepted the State's sentencing recommendation.

The prosecutor for the Muscogee County murder case, testified at the motion for new trial hearing to the following. In late July

2023, Bush agreed to testify against Riley regarding Miley's murder. Around this time, one of Bush's lawyers asked the Muscogee County prosecutor to reach out to the Troup County District Attorney's office. On July 27, 2023, two days after Bush entered his guilty plea in the Muscogee County murder case, the Muscogee County prosecutor emailed the prosecutor in the Troup County case, informing him that they "had a defendant in common, Detric Bush," and that Bush "recently entered a guilty plea" in the Muscogee County case and was awaiting sentencing "until after he testifies against a co-defendant in a murder trial." The Muscogee County prosecutor told the Troup County prosecutor that he could call or email her. The Troup County prosecutor, however, did not contact her after this email. Riley was tried in early August 2023. About a week after Riley's trial, the Muscogee County prosecutor sent another email to the Troup County prosecutor, informing him that Bush had been "an integral component of the State's case" and "was extremely helpful in securing a guilty verdict." She invited the Troup County prosecutor to call her, which he did. This call was the

8

first time the Muscogee County prosecutor spoke to the Troup County prosecutor. On the call, she gave further details about Bush's testimony, saying that he "did a fine job in testifying." Although the Muscogee County prosecutor did not ask the Troup County prosecutor to give Bush a "good offer" in the Troup County case, she believed it was "a reasonable inference that [she was] requesting leniency." However, "no deal was ever made" and the Muscogee County prosecutor "did not speak to Mr. Bush or any of his attorneys saying there was going to be leniency."

Riley's trial counsel also testified at the motion for new trial hearing, giving the following testimony. He did not impeach Bush with the pending Troup County charges because he did not know about them. If he had known about them, he would have questioned Bush about them, including asking if they were pending at the time he agreed to testify and if that case had anything to do with his testimony in this case. Counsel did not think about investigating if Bush had other charges because he was focused on other issues in the case, including getting the transcript of Bush's guilty plea

9

hearing as to the charges related to Miley in time for Riley's trial.

The trial court denied Riley's motion for new trial. As to the *Brady* and *Giglio* claim, the court found that "any consideration [related to the Troup County case] given to [Bush] for his testimony in this case was not given, at the earliest, until after closure of the [Muscogee County] case," so there was no promise or agreement of leniency for the State to disclose before Riley's trial. As to the ineffective assistance claim, the court held that even if counsel had been deficient, there was no prejudice because Bush was "thoroughly cross-examined" about his bias against Riley, his criminal history, and his negotiated plea in this case. Thus, Riley failed to show that "additional cross examination about the Troup County case would have affected the outcome of this trial."

2. Riley first argues that the State violated due process by withholding evidence of an agreement to give Bush leniency in the Troup County case. See *Brady*, 373 US at 87; *Giglio,* 405 US at 154-155.

Under *Brady*, "the suppression by the prosecution of

evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. "This includes the suppression of impeachment evidence that may be used to challenge the credibility of a witness." *Danforth v. Chapman*, 297 Ga. 29, 29 (2) (771 SE2d 886) (2015) (citing *Giglio v. United States*, 405 U.S. 150, 154-155 (92 SCt 763, 31 LE2d 104) (1972)). Accordingly, "the State is under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness." *State v. Thomas*, 311 Ga. 407, 414 (3) (858 SE2d 52) (2021) (citation and punctuation omitted).

*Pierce v. State*, 319 Ga. 846, 861 (2024).

To prevail on this claim, Riley must show that

(1) the State possessed evidence favorable to the defendant, (2) the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence, (3) the prosecution suppressed the favorable evidence, and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceeding would have been different.

*Pierce*, 319 Ga. at 861 (cleaned up). We review the trial court's factual findings "under the clearly erroneous standard." Id.

Riley's claim fails on the first prong. All of the evidence presented at the motion for new trial hearing indicated that the Muscogee County prosecutor's discussion with the Troup County

11

prosecutor implying that he should offer Bush a lenient sentence happened *after* Riley's trial and that this discussion was the first time there was even an implication of an agreement to give Bush leniency in the Troup County case. Although the Muscogee County prosecutor sent the Troup County prosecutor an email before Riley's trial, that email did not reflect even an informal agreement or understanding of any kind related to the Troup County case. It merely informed the Troup County prosecutor about Bush's guilty plea and status as a potential future witness in the Muscogee County case. And the Troup County prosecutor did not respond to that message. This evidence supports the trial court's finding that "any consideration" given to Bush related to the Troup County case was given "at the earliest ... after closure of the [Muscogee County] case." Because Riley has failed to show that there was any kind of agreement to give Bush leniency in the Troup County case that the State could have disclosed before Riley's case, his claim fails. See *Pierce*, 319 Ga. at 861 (concluding that the appellant's *Brady* claim failed because "the record includes evidence supporting the trial

12

court's finding that no immunity agreement existed"); *Burrell v. State*, 301 Ga. 21, 26 (2017) (rejecting *Brady* and *Giglio* claims on the ground that "the record is devoid of any evidence showing that the State offered these two witnesses a plea deal in exchange for their testimony"); *Rhodes v. State*, 299 Ga. 367, 369 (2016) ("Although appellant asserts there may have been informal deals between the State and these witnesses which were unknown to him and not presented at trial, appellant has failed to prove the existence of any such deals and mere speculation that informal deals existed is insufficient to substantiate appellant's claim that the State withheld exculpatory evidence which prejudiced his defense.").

3. Riley next claims that his counsel provided ineffective assistance by failing to impeach Bush with evidence of the pending case in Troup County.

> To establish ineffective assistance, a defendant generally must show both that his counsel's performance was deficient and that this deficient performance prejudiced him. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Deficient performance requires a showing that counsel discharged his responsibilities in an "objectively unreasonable way

13

considering all the circumstances and in the light of prevailing professional norms." *Thomas v. State*, 303 Ga. 700, 702 (2) (814 SE2d 692) (2018) (citation and punctuation omitted). Prejudice is shown by demonstrating "a reasonable probability[,] sufficient to undermine confidence in the outcome[,] that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009) (citation and punctuation omitted). "If either *Strickland* prong is not met, this Court need not examine the other prong." *Palmer v. State*, 303 Ga. 810, 816 (IV) (814 SE2d 718) (2018).

*Walker v. State*, 312 Ga. 232, 239 (2021).

Pretermitting whether counsel was deficient in failing to discover and question Bush about his pending case in Troup County, this failure did not result in prejudice. Counsel thoroughly questioned Bush about the deal he made with the State to avoid the murder charge in the Muscogee County case. This deal was strong impeachment evidence; it was an express agreement from the State to dismiss the murder charge and recommend a short prison sentence for the remining charges, expressly contingent on Bush's testimony. In light of that evidence—which was related to the same charges Riley faced—evidence related to the Troup County case

14

likely would have contributed little to further undermine Bush's credibility.

Riley did not present any evidence of what Bush would have said if he had been questioned about the Troup County case, but as explained in Division 2 above, the evidence presented at the motion for new trial hearing showed that the State had not promised Bush any leniency in his Troup County case before he testified at Riley's trial. Thus, the most Riley could have argued based on evidence of the Troup County case was that Bush had a pending, unrelated prosecution in a different county and he may have been *hoping* for a reduction in that sentence based on his testimony, although there was no agreement from the State that he would be granted such a reduction. Additionally, Riley's counsel emphasized in closing argument that based on the deal Bush made with the State and the amount of time Bush had already served in prison, Bush would likely be released from prison soon after the trial.

Thus, Riley's claim of ineffective assistance of counsel fails because he has not shown that there is a reasonable probability that

the result of the trial would have been different if counsel had questioned Bush about the pending Troup County case. See *Walker v. State*, 312 Ga. 232, 240 (2021) ("Although it is true that evidence of pending charges may be relevant to show a witness's bias, Appellant has presented no evidence that Stodghill had any agreement with the State as to his pending charges or any reason to shade his testimony in favor of the State. Because there is no evidence of any nexus between Stodghill's pending charges and his testimony at Appellant's trial, Appellant can show no prejudice from trial counsel's failure to discover and attempt to impeach Stodghill with evidence of the pending charges.").

*Judgment affirmed. All the Justices concur.*